Hugh A. O'NEILL and Elizabeth O'Neill,
Plaintiffs-Appellees,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 18714.

United States Court of Appeals
Sixth Circuit.

May 1, 1969.

Lester B. Snyder, Dept. of Justice, Washington, D. C., for appellant; Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks, Attys., Dept. of Justice, Washington, D. C., on brief, Bernard Stuplinski, U. S. Atty., Carl H. Miller, Asst. U. S. Atty., Cleveland, Ohio, of counsel.

W. Dean Hopkins, Cleveland, Ohio, for appellees; H. Guy Hardy, Bert W. Moyar, McDonald, Hopkins, Hardy & Hollington, Cleveland, Ohio, on brief.

Jule M. Hannaford and Dorsey, Marquart, Windhorst, West & Halladay, Minneapolis, Minn., on brief as amicus curiae for Medical Group Management Assn.

Before O'SULLIVAN and PHILLIPS, Circuit Judges, and McALLISTER, Senior Circuit Judge.

HARRY PHILLIPS, Circuit Judge.

The central question before this Court is whether a professional business organization which is a corporation under state law is a corporation for federal tax purposes wthin the meaning of 26 U.S.C. § 7701(a) (3), which provides that: "The term 'corporation' includes associations, joint-stock companies, and insurance companies." We hold that it is.

The United States appeals from a judgment in an income tax refund action. District Judge Thomas D. Lambros rendered judgment in favor of the taxpayer, after hearing the case on stipulated facts. The opinion of the District Judge is reported at 281 F.Supp. 359 (N.D. Ohio). For the reasons set forth below we affirm the judgment of the District Court.

The relevant facts are simple. Dr. Hugh A. O'Neill[1] (the taxpayer) is a shareholder, director and employee of Drs. Hill & Thomas Company (the Company). In his return for the fiscal year ending January 31, 1966, the taxpayer reported and paid taxes on the amount of income of the Company which would have been taxable to him had the Company been a partnership.[2] Having filed a timely claim for refund which was not granted, the taxpayer filed this action for refund of the tax paid on the difference between the amount reported as if partnership income and the salary payments for the taxable year includable in his gross income as an employee of the Company.

After operating for about 55 years as a partnership, Drs. Hill & Thomas was reorganized as Drs. Hill & Thomas Company in 1963 under the Ohio Professional Association law, Ohio Rev.Code §§ 1785.-01–1785.08.[3] The ten partners became shareholders in the Company. In addition to the shareholders the Company employed other doctors in providing its radiological services through contractual arrangements with five hospitals and through the operation of three offices of its own.

The District Court found as a fact that the Company was changed from a partnership to its present status under Ohio law for "the non-tax 'business purpose' of controlling a sizeable and unwieldy organization * * *." 281 F.Supp. at 361. The Government does not challenge this finding. The Court further held that Treasury Regulation § 301.7701–2 (h),[4] upon which the Government had based its conclusion that the Company was a partnership for tax purposes, was invalid as administrative overreaching without support in the law.[5] Judgment was entered for the taxpayer on the basis of the Court's conclusion that under Treas.Reg. § 301.7701–2(a–f) the Company was a corporation for federal tax purposes. The District Court also held that the Company should be regarded as a corporation under Ohio law.

The Government urges before this Court that: (1) Treas.Reg. § 301.7701–2(h) is valid; (2) under Treas.Reg. § 301.7701–2(h) the Company is a partnership for federal tax purposes; and in the alternative (3) the Company is a partnership under Treas.Reg. § 301.-7701–2(a–f). The gist of the Government's position is that in order to be a corporation for federal tax purposes a state chartered corporation must be test-

---

1. Dr. O'Neill's wife, Elizabeth, was a plaintiff in this refund action only because they filed a joint tax return.

2. Drs. Hill & Thomas Company filed a corporate tax return without taking certain deductions for 1965, the relevant tax year, and then filed a claim for refund. The Commissioner refunded the entire tax paid. The Company filed a suit challenging the validity of Treas.Reg. § 301.-7701–2 which was dismissed as moot. This Court affirmed on the ground of mootness but without prejudice to the rights of the individual taxpayers to assert their claim of invalidity of the disputed regulations in relation to any taxes assessed against them. Drs. Hill & Thom-

as Co. v. United States, 392 F.2d 204 (6th Cir.).

3. Sections 1785.01–1785.08 are Appendix A to this opinion.

4. Relevant sections of the Regulations appear as Appendix B to this opinion.

5. Courts have reached the same conclusion with respect to Treas.Reg. § 301.7701–2 (h) in five other cases. United States v. Empey, 406 F.2d 157 (10th Cir.), aff'g Empey v. United States, 272 F.Supp. 851 (D.Col.); Wallace v. United States, 294 F.Supp. 1225 (D.Ark.); Holder v. United States, 289 F.Supp. 160 (N.D.Ga.); Kurzner v. United States, 286 F.Supp. 839 (S.D.Fla.); Cochran v. United States, 299 F.Supp. 1113, (D.Ariz.).

ed against the criteria of Morrissey v. Commissioner of Internal Revenue, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263, as developed in the cases and the Regulations. The statute provides in relevant part:

"§ 7701.  Definitions

"(a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—

\*    \*    \*    \*    \*    \*

"(2) Partnership and partner.— The term 'partnership' includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term 'partner' includes a member in such a syndicate, group, pool, joint venture, or organization.

"(3)    Corporation.—The    term 'corporation' includes associations, joint-stock companies, and insurance companies.

\*    \*    \*    \*    \*    \*

"(b) Includes and including.—The terms 'includes' and 'including' when used in a definition contained in this title shall not be deemed to exclude other things otherwise within the meaning of the term defined."

In our view the question in this case is one of statutory construction. Did Congress in the statutes from 1918 to the present, when it used identical language with respect to the term "corporation," mean that some state chartered corporations should not be treated as corporations for federal tax purposes?[6]

### 1)  The Morrissey Case

The Government urges·that the determination of whether a business corporation under state law is a corporation for federal tax purposes must be made under criteria of federal law. It argues for finding that standard in the relevant statutes, the Regulations, and Morrissey v. Commissioner of Internal Revenue, supra, 296 U.S. 344, 56 S.Ct. 289. We hold that Morrissey is not controlling in the present case.

In Morrissey the question was whether a trust created for the development of a tract of land was an "association" under federal tax law and hence taxable as a corporation. The Court was not called on to define a corporation for purposes of federal taxation. Since the Court was not defining the word "corporation" and was dealing with a trust, it did not mention such characteristics of a corporation as existence by virtue of a charter granted by the sovereign, status as a legal entity separate from its owners, and being a person in contemplation of law. The Court asked this question:

"What, then, are the salient features of a trust—when created and maintained as a medium for the carrying on of a business enterprise and sharing its gains—which may be regarded as making it analogous to a corporate organization?" 296 U.S. at 359, 56 S.Ct. at 296.

In answering that question the Court made the following statements about corporate characteristics:

"A corporation, as an entity, holds the title to the property embarked in the corporate undertaking. \* \* \* Corporate organization furnishes the opportunity for a centralized management through representatives of the members of the corporation. \* \* \* An enterprise carried on by means of a trust may be secure from termination or interruption by the death of owners of beneficial interests and in this respect their interests are distinguished from those of partners and are akin to the interests of members of a corporation. And the trust type of organization facilitates, as does corporate organization, the transfer of beneficial interests without affecting the continuity of the enterprise and also the

---

6.  Revenue Act of 1918, Act of February 24, 1919, c. 18, § 1, 40 Stat. 1057, 1058.

introduction of large numbers of participants. The trust method also permits the limitation of the personal liability of participants to the property embarked in the undertaking." 344 U.S. at 359, 56 S.Ct. at 296. (Emphasis added.)

The *Morrissey* case did not deal with the definition of "corporation" under the statute, and we hold that it in no way supports the position of the Government that a corporation under state law must meet a test of resemblance to some federal standard of corporateness, before it will be taxed as a corporation under federal law.

### 2) The Statutory Foundation

We find our starting point, as did the Supreme Court in the *Morrissey* case, in the Corporation Tax Act of August 5, 1909, c. 6, § 38, 36 Stat. 11, 112–117:

"Sec. 38. That *every corporation,* joint stock company or *association,* organized for profit and having a capital stock represented by shares, and every insurance company, now or hereafter organized under the laws of the United States or of any State or Territory of the United States or under the acts of Congress applicable to Alaska or the District of Columbia, or now or hereafter organized under the laws of any foreign country and engaged in business in any State or Territory of the United States or in Alaska or in the District of Columbia, shall be subject to pay annually a special excise tax with respect to the carrying on or doing business by such corporation, joint stock company or association, or insurance company, equivalent to one per centum upon the entire net income over and above five thousand dollars received by it from all sources during such year, exclusive of amounts received by it as dividends upon stock of other corporations, joint stock companies or associations, or insurance companies subject to the tax hereby imposed; or if organized under the laws of any foreign country, upon the amount of net income over and above five thousand dollars received by it from business transacted and capital invested within the United States and its Territories, Alaska, and the District of Columbia during such year, exclusive of amounts so received by it as dividends upon stock of other corporations, joint stock companies or associations, or insurance companies subject to the tax hereby imposed." (Emphasis added.)

Construing this Act in Eliot v. Freeman, 220 U.S. 178, 187, 31 S.Ct. 360, 361, 55 L.Ed. 424, the Supreme Court held that "it was the intention of Congress to embrace within the corporation tax statute only such corporations and joint stock associations as are organized under some statute * * *." The tax was imposed on "the exercise of the privilege of doing business in a corporate capacity, as such business is done *under authority of state franchises.* * * *" Flint v. Stone Tracy Co., 220 U.S. 107, 155, 31 S.Ct. 342, 350, 55 L.Ed. 389. (Emphasis added.)

The Revenue Act of 1916 again imposed an excise tax on

"*every corporation,* joint-stock company or *association,* now or hereafter organized in the United States for profit and having a capital stock represented by shares, and every insurance company, now or hereafter organized under the laws of the United States, or any State or Territory * * *." Act of Sept. 8, 1916, c. 463, § 407, 39 Stat. 756, 789. (Emphasis added.)

The same Act imposed an income tax on such organizations "no matter how created or organized." Sec. 10, 39 Stat. at 765. The Supreme Court held that this difference in language indicated a congressional intent to impose the *excise* tax only on statutory organizations as under the 1909 Act but to impose the *income* tax on organizations without regard to whether they were based on statutory authority. Hecht v. Malley, 265 U.S. 144, 152, 44 S.Ct. 462, 68 L.Ed. 949.

The 1918 Revenue Act in the excise provision dropped the words which previously had been held to limit the tax to

statutory organizations. To determine what the 1918 Act tax was imposed upon, the Supreme Court found it necessary to read together the taxing provision and the definition sections for "corporation" and "domestic," which were substantially identical to the form in which they now appear in 26 U.S.C. § 7701. Section 1 provided that the "term 'corporation' includes associations, joint-stock companies, and insurance companies." Act of February 24, 1919, c. 18, 40 Stat. 1057, 1058. The Court construed the sections together as:

"Every *corporation, association,* joint-stock company and insurance company, 'created or organized in the United States', shall pay a special excise tax, as prescribed, with respect to the carrying on or doing business. And it must be given effect as thus read." Hecht v. Malley, *supra,* 265 U.S. 144, 154–155, 44 S.Ct. 462, 466. (Emphasis added.)

Congress has been aware that corporations differ. In the 1918 Revenue Act it provided expressly for "personal service corporations" defined as

"a corporation whose income is to be ascribed primarily to the activities of the *principal owners or stockholders* who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital * * * is not a material income-producing factor; * * *." C. 18, § 200, 40 Stat. 1057, 1059.

Under § 218(e) such corporations were to be treated as partnerships; the shareholders were taxed on both distributed and undistributed income as if they were partners. 40 Stat. at 1070. This treatment was eliminated by the Revenue Act of 1921, c. 136, § 218(d), 42 Stat. 227, 245. In 1940 and 1950 revenue acts provided special treatment for such corporations with respect to the excess profits tax.[7] The personal service corporation still is referred to under the provisions of the Internal Revenue Code.[8] We view this concept as indicative of congressional recognition of corporations not unlike the one in question in the present case and of the fact that under the federal tax law they would be taxed as corporations unless special provision were made for them in the acts of Congress.[9]

Two points stand out clearly from these statutes and cases. First, these taxes were imposed on creatures of the states which varied from state to state.[10] Second, associations, although taxed as corporations, were distinguished from corporations in the statutes and in the cases. See Hecht v. Malley, *supra,* 265 U.S. 144, 157, 44 S.Ct. 462.

In 1932 Congress added the definition of "partnership" to the Code as it is defined in 26 U.S.C. § 7701(a) (2).[11] This definition was not added in order to

---

7. Second Revenue Act of 1940, Oct. 8, 1940, c. 757, § 201, § 502, 54 Stat. 974, 987, 1005; Excess Profits Tax Act of 1950, Act of January 3, 1951, c. 1199, § 101, 64 Stat. 1137, 1176.

8. See 26 U.S.C. §§ 301, 312 and 1016.

9. See Arts. 1526–1531 in Appendix C to this opinion.

10. Part of the argument of the taxpayers in Flint v. Stone Tracy Co., 220 U.S. 107, 31 S.Ct. 342, was answered by the Court as follows:

"The argument that different corporations are so differently circumstanced in different States, and the operation of the law so unequal as to destroy it, is so fully met in the opinion in Knowlton v. Moore, 178 U.S. 41, [20 S.Ct. 747, 44 L.Ed. 969] *supra,* that it is only necessary to make reference thereto. For this purpose the law operates uniformly, geographically considered, throughout the United States, and in the same way wherever the subject-matter is found. A liquor tax is not rendered unlawful as a revenue measure because it may yield nothing in those States which have prohibited the liquor traffic. No more is the present law unconstitutional because of inequality of operation owing to different local conditions." 220 U.S. 174, 31 S.Ct. 358.

The law challenged was the 1909 Corporation Tax law. In Hecht v. Malley, *supra,* 265 U.S. 144, 155, 44 S.Ct. 462, the Court held that the 1918 Act was intended to broaden the coverage of the excise tax.

11. Revenue Act of 1932, June 6, 1932, c. 209, § 1111, 47 Stat. 169, 289.

change the definition of "corporation." The purpose of adding this definition was to dispose of administrative problems which had arisen with respect to the filing of information returns from joint ventures, syndicates, pools, and similar organizations which were not clearly partnerships, associations, or trusts. House Report No. 708, 72d Cong., 1st Sess. at 53, § 1004; Senate Report No. 665 at 59, § 1109. In view of this purpose it is significant that Congress used the words "unincorporated organization." There is nothing to indicate any congressional intent that these words be interpreted to mean that corporations might be considered partnerships. As the Court in United States v. Empey, 406 F.2d 157, 170, said: "The definition of partnership, by its language, plainly refers to unincorporated organizations." We find no support for the Government's interpretation of 26 U.S.C. § 7701(a) (3) in the definition of partnership.

Although Congress consistently has provided express exemptions from taxation, e. g., 26 U.S.C. § 501 and its predecessors, no indication is to be found in the Code that it has authorized an exemption for professional service corporations. On the basis of the history outlined above and the fact that the present section of the Code is a direct descendant of the definition contained in the 1918 Act, we conclude that the proper interpretation of 26 U.S.C. § 7701(a) (3) is that the term "corporation" includes corporations, associations, joint-stock companies and insurance companies. This construction gives effect to the § 7701 (b) definition of "includes." The Government's interpretation does not.

### 3) The Legislative History

The legislative history of the various revenue acts from 1918 to the present provides little light in the way of express statement as to what Congress meant by the word "corporation" in the sense in which we have concluded it is to be found within § 7701(a) (3).

The Government in its brief cited the following excerpt from the congressional debate on the 1918 Revenue Act:

"MR. BORLAND: The word 'corporation' ordinarily means a legal entity.

"MR. GARNER: I know, but we have changed it. We have undertaken to determine what a corporation is by stating specifically what it includes, and we say that it includes an association. Now, if you want to go to the dictionary and find out the definition of association, well and good. I think it means a number of people, whether organized under law or voluntarily." 56 Cong.Rec., Part 10, p. 10,418.

Standing alone, this quotation would indicate some support for the Government's position. However, a reading in context shows that these statements came in the midst of a discussion over deductions for charitable contributions. The following remarks immediately precede the statements quoted by the Government:

"MR. BORLAND: We have a board of public welfare which is conducted by men who serve without pay. They are appointed by public authorities. They do collect quite a fund.

"MR. CANNON: Are they incorporated?

"MR. BORLAND: No.

"MR. CANNON: Are they included. [Sic]

"MR. GARNER: They would be if they are an association of people. It makes no difference whether they are incorporated, if they are an association of people. Let the gentlemen turn to the definition of 'corporation' on page 1 of the bill which I just read. What is an association? It is a number of people who are associated together.

"MR. CANNON: The gentleman is sure that would change it.

"MR. GARNER: We undertake to do it in the definition here." *Id.*

If any inference were to be drawn from this dialogue as to the meaning of

"corporation," it would be that the understanding of corporation in the mind of Congress was that it was a legal entity and that "associations" as included in the term "corporation" were something far broader than the courts have construed the term "association." We do not believe that this dialogue sheds any light on the meaning to be ascribed to "corporation" as included in the term "corporation."

In the House records of the section by section reading of the Revenue Act of 1918 we find this statement by Representative Cordell Hull of Tennessee, the floor manager of the bill:

> "MR. HULL of Tennessee: The income-tax law only defines two taxable entities, the individual and the corporation. It prescribes systems of deductions for those two business entities in computing their income for taxation. Now, partnerships not being recognized as a taxable entity under the law in any of these provisions for the purpose of taxation, I take it the House is not desirous of creating a taxable entity of a partnership for the sole purpose of a tax exemption." 56 Cong.Rec., Part 10, p. 10,420.

We have neither found nor have we been referred to any more direct indications of the legislative intent with respect to state corporations than those set forth above. Extensive reading in the debates and committee reports with respect to the Revenue Acts of 1918, 1921, 1932 (when the definition of "partnership" was first introduced), 1940, 1950 and 1954, leaves us with the firm conviction that Congress consistently has intended that corporations as created under state laws be corporations for federal tax purposes.

### 4) The Regulations

The Government relies on what it characterizes as "interpretive regulations" which it urges have reflected consistently a congressional intent with respect to the taxation of corporations. *But cf.* T.D. 1806, 15 Treas.Dec.Int.Rev.

88 (1912). It begins with reference to Regulations 45, relating to the income tax and war profits and excess profits tax under the Revenue Act of 1918, Articles 1501–08. Not one of the Articles cited indicated in any way that a corporation under state law would not be treated as a corporation for federal tax purposes. The tone of those Regulations is perhaps best exemplified by Article 1506:

> "ART. 1506. Limited partnership as corporation.—On the other hand, limited partnerships of the type of partnerships with limited liability or partnership associations authorized by the statutes of Pennsylvania and of a few other States are only nominally partnerships. Such so-called limited partnerships, offering opportunity for limiting the liability of all the members, providing for the transferability of partnership shares, and capable of holding real estate and bringing suit in the common name, are more truly corporations than partnerships and must make returns of income and pay the tax as corporations. The income received by the members out of the earnings of such limited partnerships will be treated in their personal returns in the same manner as distributions on the stock of corporations. *In all doubtful cases limited partnerships will be treated as corporations* unless they submit satisfactory proof that they are not in effect so organized. Michigan and Virginia partnership associations are corporations. *Such a corporation may or may not be a personal service corporation.* See sections 200 and 218 of the statute and articles 1523–1532." (Emphasis added.)

In fact, not until the 1960 promulgation of Treasury Regulations § 301.-7701-1(c) was there any indication that a state created corporate entity might not be a corporation under 26 U.S.C. § 7701(a)(3). There had been no change in the relevant tax statute. In 1961, considering the possibility of applying the 1960 Regulations to organizations

incorporated under state law, Professor Bittker wrote:

> "Do these 'corporations' or 'professional corporations' constitute 'corporations' as this term is used in the Internal Revenue Code? To the best of my knowledge, this is a novel question in the sense that until now all organizations bearing the label 'corporation' under state law have, without further inquiry, been accorded that status for federal income tax purposes, the only debate in this area having been concerned with the classification of organizations that are *not* labelled 'corporations' by state law." "Professional Associations and Federal Income Taxation: Some Questions and Comments," 17 Tax.L.Rev. 1, 25–26 (1961).

■ We believe that the re-enactments of the Code definition of "corporation" prior to 1960 in no way support the Government's position that corporations are taxed as corporations because they meet the test of "associations" under federal tax law. Indeed the absence of any indication that state law corporations would be treated as anything other than corporations for federal tax purposes may be taken as some indication that Congress used them as a definitional lodestar. To the extent that the Regulations support the Government's position, we hold that these interpretive regulations are entitled to no weight and are invalid since they plainly are inconsistent with the statute and constitute an attempt to legislate.[12] See Commissioner of Internal Revenue v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831; Helvering v. Sabine Transportation Co., 318 U.S. 306, 311–312, 63 S.Ct. 569, 87 L.Ed. 773.

### 5) What Is a Corporation for Federal Tax Purposes?

■ The simple fact is that § 7701(a) (3) does not define the word "corporation" but states that organizations which otherwise would not be within the meaning of the term are to be included in it for federal tax purposes. In the light of our discussion above, we find that this is a proper case in which to apply the plain meaning rule of statutory construction. See United States v. Leslie Salt Co., 350 U.S. 383, 397, 76 S.Ct. 416, 100 L.Ed. 441; United States v. Isham, 84 U.S. (17 Wall.) 496, 504, 21 L.Ed. 728.

In Trustees of Dartmouth College v. Woodward, 17 U.S. (4 Wheat.) 518, 636, 4 L.Ed. 629, Chief Justice John Marshall defined a corporation as follows:

> "A corporation is an artificial being, invisible, intangible, and existing only in contemplation of law. Being the mere creature of law, it possesses only those properties which the charter of its creation confers upon it, either expressly, or as incidental to its very existence. These are such as are supposed best calculated to effect the object for which it was created. Among the most important are immortality, and, if the expression may be allowed, individuality; properties, by which a perpetual succession of many persons are considered as the same, and may act as a single individual. They enable a corporation to manage its own affairs, and to hold property, without the perplexing intricacies, the hazardous and endless necessity, of perpetual conveyances for the purpose of transmitting it from hand to hand. It is chiefly for the purpose of clothing bodies of men, in succession, with these qualities and capacities, that corporations were invented, and are in use. By these means, a perpetual succession of individuals are capable of acting for the promotion of the particular object, like one immortal being."

This definition is as good now as it was at the time it was announced. It expresses the common understanding of what a corporation is under present law.

---

12. The net effect of the Government's position with respect to the Company in this case of course is to create an exemption from corporate taxation based on 26 U.S.C. § 7701(a) (3).

The recognition of corporate entity and the imposition of federal taxes upon corporations has been a consistent feature of the modern tax cases, along with a studied refusal to disregard the corporate entity except for well established reasons. In Eisner v. Macomber, 252 U.S. 189, 213–214, 40 S.Ct. 189, 195, 64 L.Ed. 521, the Court said:

"We have no doubt of the power or duty of a court to look through the form of the corporation and determine the question of the stockholder's right, in order to ascertain whether he has received income taxable by Congress without apportionment. But, looking through the form, we cannot disregard the essential truth disclosed; ignore the substantial difference between corporation and stockholder; treat the entire organization as unreal; look upon stockholders as partners, when they are not such; treat them as having in equity a right to a partition of the corporate assets, when they have none; and indulge the fiction that they have received and realized a share of the profits of the company which in truth they have neither received nor realized. We must treat the corporation as a substantial entity separate from the stockholder, not only because such is the practical fact but because it is only by recognizing such separateness that any dividend—even one paid in money or property—can be regarded as income of the stockholder. Did we regard corporation and stockholders as altogether identical, there would be no income except as the corporation acquired it; and while this would be taxable against the corporation as income under appropriate provisions of law, the individual stockholders could not be separately and additionally taxed with respect to their several shares even when divided, since if there were entire identity between them and the company they could not be regarded as receiving anything from it, any more than if one's money

were to be removed from one pocket to another."

In Burnet v. Commonwealth Improvement Co., 287 U.S. 415, 419, 53 S.Ct. 198, 199, 77 L.Ed. 399, in holding that the corporate entity could not be disregarded at the instance of the taxpayer, the Court pointed out, quoting the Board of Tax Appeals, " 'The fact is that petitioner [corporate taxpayer] did have a separate legal existence with privileges and obligations entirely separate from those of its stockholders.' "

■ It appears clear that the corporate entity created by state law is the corporation taxed under the Internal Revenue Code. Against another attempt by a taxpayer to have the corporate entity disregarded for federal tax purposes, the Supreme Court held in Moline Properties, Inc. v. Commissioner of Internal Revenue, 319 U.S. 436, 438–439, 63 S.Ct. 1132, 1134, 87 L.Ed. 1499:

"The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity. New Colonial [Ice] Co. v. Helvering, 292 U.S. 435, 442 [54 S.Ct. 788, 78 L.Ed. 1348]; Deputy v. du Pont, 308 U.S. 488, 494 [60 S.Ct. 363, 84 L.Ed. 416]."

In the same case the Court enumerated situations in which the corporate entity will be disregarded. 319 U.S. at 439, 63 S.Ct. 1132.

In Knoxville Truck Sales & Service, Inc. v. Commissioner of Internal Revenue, 10 T.C. 616, acq. C.B. 1948–2 3, accord, S.R. 1123, C.B. III–2 4 (1924), the taxpayer corporation had been issued a charter by the State of Tennessee but had not complied with certain require-

ments of the State law. As described by the taxpayer:

"* * * Even though there was created by the filing of the charter, a corporation as defined by Section 3719 of the Code, such a body existed in name only and was but an empty shell. It was not a corporation for Federal tax purposes because no colorable attempt was made to comply with the conditions subsequent set forth by the statutes and courts of Tennessee as prerequisites to the doing of business as a corporation. Said skeleton entity in the instant case owned no property and had no stockholders, directors or officers and was not authorized under the laws of Tennessee to do business." 10 T.C. at 619.

The Tax Court held that during the period that the corporate charter existed the taxpayer was a corporation for federal tax purposes. It did this at the instance of the Government without any examination of what the Supreme Court in Morrissey v. Commissioner of Internal Revenue, *supra*, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263, characterized as corporate attributes. The corporate charter was revoked for the taxpayer's default in payment of the State's taxes. The Tax Court held that from the date of revocation of its charter the taxpayer was not a corporate legal entity and was not taxable as a corporation, even though it had continued to operate as before revocation because the owner did not know that the charter had been revoked.

The Government urges that a corporate resemblance test must be applied to the Company, because Ohio law does not treat it exactly like other Ohio corporations and imposes different limitations on its existence. When the definition of the term "corporation" was adopted in the 1918 Revenue Act, corporations under state law had long been subject to varying grants of power.

In Trustees of Dartmouth College v. Woodward, *supra*, 17 U.S. (4 Wheat.) 518, 634, 4 L.Ed. 629, Chief Justice John Marshall wrote of a corporation:

"Being the mere creature of law, it possesses only those properties which the charter of its creation confers upon it, either expressly, or as incidental to its very existence. These are such as are supposed best calculated to effect the object for which it was created."

Speaking through Justice Field in Paul v. Virginia, 75 U.S. (8 Wall.) 168, 181, 19 L.Ed. 357, the Court said:

"Now a grant of corporate existence is a grant of special privileges to the corporators enabling them to act for certain designated purposes as a single individual, and exempting them (*unless otherwise specially provided*) from individual liability." (Emphasis added.)

The fact that corporations differ from state to state was again recognized in Flint v. Stone Tracy Co., *supra*, 220 U.S. 107, 174, 31 S.Ct. 342, 55 L.Ed. 389. These cases demonstrate that Congress in enacting the taxing statutes must have been aware of variation and has chosen to disregard it.

6) The "Labeling" Argument

The Government urges that:

"federal taxation may not turn on state labels attached to entities created under state law, since that would vitiate the 'substance over form' principle so firmly embedded in the law of federal taxation (see, e. g., Gregory v. Helvering, 293 U.S. 465 [55 S.Ct. 266, 79 L.Ed. 596]) and lead to the rampant inequality of federal tax treatment." [Sic]

The assumption apparently made by the Government is that state legislatures might go on a spree of labeling partnerships as corporations and that this would create federal tax inequities. First, we see no warrant for such an assumption. The Government points to the fact that some states have enacted professional association acts under which the associa-

**898**

tions are not corporations. This gives us no reason to believe that the legislatures did not have some good reason for declining to grant corporate status to the associations. In any event, the case before us is not such a case. Second, with respect to tax inequities, as we have noted above, some inequities have existed for many years and Congress has seen fit to do nothing about them in terms of enacting a more precise definition of "corporation." Apparently Congress meant to avoid some of the tax inequities by providing for the taxation of joint-stock companies and associations as corporations. It also bears noting that the particular tax inequities of which the Government here complains may be regarded as a result of the 1960 and 1965 amendments to the Regulations which the Commissioner saw fit to adopt after United States v. Kintner, 216 F.2d 418 (9th Cir.), and the enactment of professional corporation and association statutes by some of the state legislatures.

We do not regard our construction of § 7701(a) (3), that state corporations are corporations within the meaning of that section, as the adoption of a "labeling" approach. The inquiry is whether the state granted existence to a corporate entity under its law. The fact that it limits the corporate "properties" to "such as are supposed best calculated to effect the object for which it was created" has no bearing under the Internal Revenue Code. Trustees of Dartmouth College v. Woodward, *supra*, 17 U.S. (4 Wheat.) 518, 636.

### 7) The Company Under Ohio Law

■ Drs. Hill & Thomas Company was created under the Ohio Professional Association law (see appendix A) which incorporates by reference Chapter 1701, the General Corporation Law, insofar as it does not conflict with the Professional Association law. Ohio Rev.Code § 1785.-08. The purpose of the law plainly was to permit the incorporation of certain professional organizations. See State ex rel. Green v. Brown, 173 Ohio St. 114, 180 N.E.2d 157; Cleveland Clinic

v. Sombrio, 35 O.O.2d 112, 6 Ohio Misc. 48, 215 N.E.2d 740 (Akron Mun.Ct.).

■ The Government strenuously urges that the professional corporation is a very different thing from the ordinary business corporation. It argues that, contrary to the holding of the District Court, the shareholders of the corporation do not possess limited liability. The statute however does not remove the limited liability of the shareholder; it merely preserves the personal liability of the professional man in his professional dealings with patients. Ohio Rev. Code § 1785.04. This liability has nothing to do with his status as a shareholder. The shareholder in his capacity as a shareholder does enjoy limited liability. Vesely, "Ohio Professional Association Law," 13 Western Res.L.Rev. 195, 203.

■ The government alleges that the shares in the corporation are not freely transferable because they can be owned only by persons licensed to practice the profession for which the corporation is chartered and because they can be transferred only to other professional persons who are permitted to become employees of the corporation. We find nothing in the law which precludes the ownership of shares by a person who is not an employee of the corporation, and the statute imposes no such limitation on such transferability. The only limitation which it imposes is that the shareholders must be licensed to practice the profession. Ohio Rev.Code § 1785.05; Vesely, "Ohio Professional Association Law," 13 Western Res.L.Rev. 195, 199. We find nothing of relevance to this case in the fact that the shareholders agreed that the stock should not be sold to persons who do not become employees or retained by persons after they cease to be employees. Agreements and provisions to this effect are not at all uncommon with respect to small corporations whose stock is closely held.

The Government urges that there is a lack of centralization of management because of the required professional relationship between the person rendering

and the person receiving the professional service. The professional relationship and the principles governing it exist independent of the corporation law or the kind of entity through which the professional man renders his services. The fact that the State of Ohio saw fit expressly to preserve that relationship and to authorize only such centralization of management as is compatible with it does not affect the determination of whether under Ohio law the Company is a corporation. See generally Anderson, "Tax Aspects of Professional Associations," 15th Tax Institute, U. of S. Calif. School of Law (1963) 309, 335–36.

The Government urges that the corporation does not have continuity of life as does the ordinary Ohio business corporation since the shares must be owned by persons licensed to practice the profession and one of the shareholders might become disqualifed at a time when the corporation could not redeem the shares and no one was willing to buy them. It is not clear under Ohio law what the result would be were such a situation to exist. However, the fact that there might be a condition which would require the forfeiture of corporate status does not change the legal situation: Ohio has granted to such corporations continuity of existence. Charters are generally granted subject to revocation on the occurrence of conditions subsequent, e. g., failure to pay state taxes.

What the Government seeks by this line of argument is to include in the tax application standard what it regards as the requirements of corporateness under Morrissey v. Commissioner of Internal Revenue, supra, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263. The *Morrissey* case is discussed above. In our view the inquiry is limited at this point to whether the Company is a corporation under Ohio law. We hold that it is a corporation under Ohio law. The Government has referred us to nothing and we have found

nothing which would support a holding to the contrary.

### 8) Conclusion

■ We hold that a corporation created under state law is a corporation within the meaning of 26 U.S.C. § 7701 (a) (3) and that Treas.Reg. §§ 301.7701–1(c) and 301.7701–2 are invalid insofar as they require a corporation created under state law to be treated as something other than a corporation for federal tax purposes.[13] Accordingly, we hold that Drs. Hill & Thomas Company is a corporation under Ohio law and is a corporation within the meaning of 26 U.S.C. § 7701(a) (3).

For the reasons stated in this opinion the judgment of the District Court is affirmed.

### APPENDIX A

Ohio Rev.Code (1964)

§ 1785.01 Definitions.

As used in sections 1785.01 to 1785.08, inclusive, of the Revised Code:

(A) "Professional service" means any type of professional service which may be performed only pursuant to a license, certificate, or other legal authorization, as provided by Chapters 4701., 4703., 4705., 4715., 4725., 4729., 4731., 4733., and 4741. of the Revised Code, to certified public accountants, licensed public accountants, architects, attorneys, dentists, pharmacists, optometrists, physicians and surgeons, and practitioners of limited branches of medicine or surgery as defined in section 4731.15 of the Revised Code, professional engineers, and veterinarians.

(B) "Professional association" means an association organized under sections 1785.01 to 1785.08, inclusive, of the Revised Code, for the sole purpose of rendering a professional service.

13. The District Court held that Treas. Reg. § 301.7701–2(h) is invalid in its entirety. We hold it to be invalid only to the extent stated in this opinion.

§ 1785.02 Professional individuals and groups may incorporate.

An individual or group of individuals each of whom is licensed or otherwise legally authorized to render the same kind of professional service within this state may organize and become a shareholder, or shareholders, of a professional association. Any such group of individuals who may be rendering a specific professional service as an organization created otherwise than pursuant to sections 1785.01 to 1785.08, inclusive, of the Revised Code, may incorporate under and pursuant to such sections by amending the agreement establishing the organization in such manner that such agreement as amended constitutes articles of incorporation prepared and filed in the manner prescribed in section 1785.08 of the Revised Code and by otherwise complying with the applicable requirements of sections 1785.01 to 1785.08, inclusive, of the Revised Code.

§ 1785.03 Employees.

A professional association may render professional service only through officers, employees, and agents who are themselves duly licensed or otherwise legally authorized to render professional service within this state. The term "employee" as used in this section does not include clerks, bookkeepers, technicians, or other individuals who are not usually and ordinarily considered by custom and practice to be rendering professional services for which a license or other legal authorization is required, nor does the term "employee" include any other person who performs all his employment under the direct supervision and control of an officer, agent, or employee who is himself rendering professional service to the public on behalf of the corporation.

§ 1785.04 Professional relationship.

Sections 1785.01 to 1785.08, inclusive, of the Revised Code, do not modify any law applicable to the relationship between a person furnishing professional service and a person receiving such service, including liability arising out of such professional service.

§ 1785.05 Restricted issuance of stock.

A professional association may issue its capital stock only to persons who are duly licensed or otherwise legally authorized to render the same professional service as that for which the association was organized.

§ 1785.06 Annual statement of names and addresses of stockholders.

A professional association shall, within thirty days after the thirtieth day of June in each year, furnish a statement to the secretary of state showing the names and post office addresses of all shareholders in such corporation and shall certify that all shareholders are duly licensed or otherwise legally authorized to render professional service in this state. This report shall be made on such form as shall be prescribed and furnished by the secretary of state, shall be signed by the president or vice-president and the secretary or an assistant secretary of the corporation, acknowledged and sworn to before a notary public by the persons signing the report and shall be filed in the office of the secretary of state.

§ 1785.07 Sale or transfer of shares.

A shareholder of a professional association may sell or transfer his shares in such association only to another individual who is duly licensed or otherwise legally authorized to render the same professional service as that for which the corporation was organized.

§ 1785.08 Effect of incorporation laws.

Chapter 1701. of the Revised Code applies to professional associations, including their organization and the manner of filing articles of incorporation, except that the requirements of division (A) of section 1701.06 of the Revised Code do not apply to professional associations. If any provision of sections 1785.01 to 1785.08, inclusive, of the Revised Code, conflicts with any provision of Chapter 1701. of the Revised Code, the provisions of sections 1785.01 to 1785.08, inclusive, of the Revised Code, shall take precedence.

## APPENDIX B

Treasury Regulations (as amended 1965)

§ 301.7701–1 Classification of organizations for tax purposes.

(a) *Person.* The term "person" includes an individual, a corporation, a partnership, a trust or estate, a joint-stock company, an association, or a syndicate, group, pool, joint venture, or other unincorporated organization or group. Such term also includes a guardian, committee, trustee, executor, administrator, trustee in bankruptcy, receiver, assignee for the benefit of creditors, conservator, or any person acting in a fiduciary capacity.

(b) *Standards.* The Internal Revenue Code prescribes certain categories, or classes, into which various organizations fall for purposes of taxation. These categories, or classes, include associations (which are taxable as corporations), partnerships, and trusts. The tests, or standards, which are to be applied in determining the classification in which an organization belongs (whether it is an association, a partnership, a trust, or other taxable entity) are determined under the Internal Revenue Code. Sections 301.-7701–2 to 301.7701–4 set forth these tests, or standards, which are to be applied in determining whether an organization is (1) an association (see § 301.7701–2), (2) a partnership (see § 301.7701–3), or (3) a trust (see § 301.7701–4).

(c) *Effect of local law.* As indicated in paragraph (b) of this section, the classes into which organizations are to be placed for purposes of taxation are determined under the Internal Revenue Code. Thus, a particular organization might be classified as a trust under the law of one State and a corporation under the law of another State. However, for purposes of the Internal Revenue Code, this organization would be uniformly classed as a trust, an association (and, therefore, taxable as a corporation), or some other entity, depending upon its nature under the classification standards of the Internal Revenue Code. Similarly, the term "partnership" is not limited to the common-law meaning of partnership, but is broader in its scope and includes groups not commonly called partnerships. See § 1.761–1 of this chapter (Income Tax Regulations) and § 301.7701–3. The term "corporation" is not limited to the artificial entity usually known as a corporation, but includes also an association, a trust classed as an association because of its nature or its activities, a joint-stock company, and an insurance company. Although it is the Internal Revenue Code rather than local law which establishes the tests or standards which will be applied in determining the classification in which an organization belongs, local law governs in determining whether the legal relationships which have been established in the formation of an organization are such that the standards are met. Thus, it is local law which must be applied in determining such matters as the legal relationships of the members of the organization among themselves and with the public at large, and the interests of the members of the organization in its assets. Nevertheless, the labels applied by local law to organizations, which may now or hereafter be authorized by local law, are in and of themselves of no importance in the classification of such organizations for the purposes of taxation under the Internal Revenue Code. Thus, a professional service organization, formed under the law of a State authorizing the formation by one or more persons of a so-called professional service corporation, would not be classified for purposes of taxation as a "corporation" merely because the organization was so labeled under local law. See Morrissey et al. v. Commissioner, 296 U.S. 344 (1935). The classification in which a professional service organization belongs is determined under the tests and standards set forth in §§ 301.7701–2, 301.-7701–3, and 301.7701–4.

§ 301.7701–2 Associations, including organizations labeled "corporations."

\* \* \* \* \* \*

(h) *Classification of professional service organizations.* (1) (i) A professional service organization is treated

as a corporation (or as an association and, therefore, taxable as a corporation) only if it has sufficient corporate characteristics to be classified as a corporation under paragraph (a) of this section, rather than as a partnership or proprietorship. For purposes of determining the classification of an organization under these regulations, the term "professional service organization," as used in this paragraph, means an organization formed by one or more persons to engage in a business involving the performance of professional services for profit which under local law, may not be organized and operated in the form of an ordinary business corporation having the usual characteristics of such a corporation. Thus, even if a professional service organization is organized as an ordinary business corporation, this paragraph applies if such corporation is subject to local regulatory rules which deprive such corporation of the usual characteristics of an ordinary business corporation. This paragraph applies irrespective of whether an organization is labeled under local law as a professional service corporation, a professional service association, a trust, or otherwise.

(ii) In determining whether a professional service organization has the major characteristics ordinarily found in a business corporation and whether any other significant factors are to be taken into account in classifying the organization, the special professional requirements of the profession engaged in by the members of the organization must be taken into consideration. Although such an organization may have associates and is engaged in business for profit, the relationships of the members of such an organization to each other as well as their relationships to employees, to clients, patients, or customers and to the public are inherently different from the relationships characteristic of an ordinary business corporation. In determining the nature of these relationships, consideration must be given to the law under which the organization is formed, the charter, articles of association, by-laws, or other documents relating to the formation of the organization, and all other facts and rules governing or pertaining to such relationships in the usual course of the practice of the profession of the participants.

(2) A professional service organization does not have continuity of life within the meaning of paragraph (b) of this section if the death, insanity, bankruptcy, retirement, resignation, expulsion, professional disqualification, or election to inconsistent public office of any member will (determined without regard to any agreement among the members) cause under local law the dissolution of the organization. A business corporation has a continuing identity as an entity which is not dependent upon a shareholder's active participation in any capacity in the production of the income of the corporation. Furthermore, the interest of a shareholder in an ordinary business corporation includes a right to share in the profits of the corporation, and such right is not legally dependent (determined without regard to any agreement among the shareholders) upon his participation in the production of the corporation's income. However, the interest of a member of a professional service organization generally is inextricably bound to the establishment and continuance of an employment relationship with the organization, and he cannot share in the profits of a professional service organization unless he also shares in the performance of the services rendered by the organization. For purposes of this paragraph, the term "employment relationship" is used to describe such active participation by the member and is not restricted to the common-law meaning of such term. If local law, applicable regulations, or professional ethics do not permit a member of a professional service organization to share in its profits unless an employment relationship exists between him and the organization, and if in such case, he or his estate is required to dispose of his interest in the organization if the employment relationship terminates, the continuing existence of

the organization depends upon the willingness of its remaining members, if any, either to agree, by prior arrangement or at the time of such termination, to acquire his interest or to employ his proposed successor. The continued existence of such a professional service organization is similar to that of a partnership formed under the Uniform Partnership Act, whose business continues pursuant to an agreement providing that the business will be continued by the remaining members after the withdrawal or death of a partner (see paragraph (b) of this section), and is essentially different from the continuity of life possessed by an ordinary business corporation. Consequently, such a professional service organization lacks continuity of life.

(3) In applying the rules of paragraph (c) of this section, relating to centralization of management, a professional service organization does not have centralization of management where the managers of a professional service organization under local law are not vested with the continuing exclusive authority to determine any one or more of the following matters: (i) The hiring and firing of professional members of the organization and its professional and lay employees, (ii) the compensation of the members and of such employees, (iii) the conditions of employment—such as working hours, vacation periods, and sick leave, (iv) the persons who will be accepted as clients or patients, (v) who will handle each individual case or matter, (vi) the professional policies and procedures to be followed in handling each individual case, (vii) the fees to be charged by the organization, (viii) the nature of the records to be kept, their use, and their disposition, and (ix) the times and amounts of distributions of the earnings of the organization to its members as such. Moreover, although a measure of central control may exist in a professional service organization, the managers of a professional service organization in which a member retains traditional professional responsibility cannot have the continuing exclusive authority to determine all of the matters described in the preceding sentence. Instead, such measure of central control is no more than that existing in an ordinary large professional partnership which has one or more so-called managing partners and in which a member retains the traditional professional autonomy with respect to professional decisions and the traditional responsibility of a professional person to the client or patient. Such measure of central control is essentially different from the centralization of management existing in an ordinary business corporation. Therefore, centralization of management does not exist in such a professional service organization.

(4) A professional service organization has the corporate characteristic of limited liability within the meaning of paragraph (d) of this section only if the personal liability of its members, in their capacity as members of the organization, is no greater in any aspect than that of shareholder-employees of an ordinary business corporation. If under local law and the rules pertaining to professional practice, a mutual agency relationship, similar to that existing in an ordinary professional partnership, exists between the members of a professional service organization, such organization lacks the corporate characteristic of limited liability.

(5) (i) If the right of a member of a professional service organization to share in its profits is dependent upon the existence of an employment relationship between him and the organization, free transferability of interests within the meaning of paragraph (e) of this section exists only if the member, without the consent of other members, may transfer both the right to share in the profits of the organization and the right to an employment relationship with the organization.

(ii) The corporate characteristic of free transferability of interests exists in a modified form within the meaning of paragraph (e) (2) of this section when a shareholder in an ordinary business corporation can transfer his interest in

such corporation only after having offered such interest to the other shareholders at *its fair market value*. In such a case, the so-called right of first refusal applies only to an interest which is a right to share in the profits, the assets, and the management of the enterprise. However, if the interest of a member of a professional service organization constitutes a right to share in the profits of the organization which is contingent upon and inseparable from the member's continuing employment relationship with the organization, and the transfer of such interest is subject to a right of first refusal, such interest is subject to a power in the other members of the organization to determine not only the individuals whom the organization is to employ, but also who may share with them in the profits of the organization. The possession by other members of the power to determine, in connection with the transfer of such an interest, whom the organization is to employ is so substantial a hindrance upon the free transferability of interests in the organization that such power precludes the existence of a modified form of free transferability of interests. Therefore, if a member of a professional service organization who possesses such an interest may transfer his interest to a qualified person who is not a member of the organization only after having first offered his interest to the other members of the organization at its fair market value, the corporate characteristic of free transferability of interests does not exist.

## APPENDIX C

Treasury Regulations 45, Relating to the Income Tax and War Profits and Excess Profits Tax Under the Revenue Act of 1918 (Emphasis added in these articles).

ART. 1526. Personal services rendered by personal service corporation: more than one business.—It frequently happens that corporations are engaged in two or more *professions* or businesses which are more or less related, one of which does not consist of rendering personal service. Thus an *engineering* con-

cern may also engage in contracting, which amounts to trading in materials and labor, a brokerage concern may guarantee some of its accounts, a photographer may sell pictures, frames, art goods and supplies, or a dealer in a commodity may furnish expert advice or services with respect to its installation, use, etc. In such case the corporation is not a personal service corporation unless the nonpersonal service element is negligible or merely incidental and no appreciable part of its earnings are to be ascribed to such sources. * * *

ART. 1527. Activities of stockholders of personal service corporation.—In determining whether a corporation is a personal service corporation, no weight can be given to the fact that it renders personal services unless (*a*) the principal owners or stockholders are regularly engaged in the active conduct of its affairs and are engaged in such a manner that the earnings are to be ascribed primarily to their activities, and (*b*) its affairs are conducted principally by such owners or stockholders.

ART. 1528. Activities of stockholders of personal service corporation: conduct of affairs.—Where the principal owners or stockholders do not render the principal part of the services, but merely supervise or direct a force of employees, the corporation is not a personal service corporation. If employees contribute substantially to the services rendered by a corporation, it is not a personal service corporation unless in every case in which services are so rendered the value of and the compensation charged for such services are to be attributed primarily to the experience or skill of the principal owners or stockholders and such fact is evidenced in some definite manner in the normal course of the *profession* or business. The fact that the principal owners or stockholders give personal attention or render valuable services to the corporation as a result of which its earnings are greater than those of a corporation engaged in a like or similar business, the principal owners or stockholders of which do not devote personal attention to the

 

management or supervision of its affairs, does not of itself constitute the corporation a personal service corporation.

ART. 1529. Activities of stockholders of personal service corporation: stock interest required.—No definite percentage of stock or interest in the corporation which must be held by those engaged in the active conduct of its affairs in order that they may be deemed to be the principal owners or stockholders can be prescribed as a conclusive test, as other facts may affect any presumption so established. No corporation or its owners or stockholders shall, however, make a return in the first instance on the basis of its being a personal service corporation unless at least 80 per cent of its stock is held by those regularly engaged in the active conduct of its affairs.

ART. 1530. Activities of stockholders of personal service corporation: change in ownership.—The fact that the owners or stockholders of the corporation may change during the course of the taxable year does not take a corporation which is normally in the personal service class out of that class. Frequent changes in the ownership of any substantial interest or number of shares are, however, evidence bearing on the question as to whether the principal owners or stockholders are actively engaged in the conduct of the affairs of the corporation. The incapacity, retirement or death of a principal owner or stockholder who has been actively engaged in the conduct of its affairs will not be deemed to make any change in the status of the corporation during a reasonable time thereafter.

ART. 1531. Capital of personal service corporation.—In determining whether a corporation is a personal service corporation, no weight can be given to the fact that the invested capital of the corporation for the purpose of the war profits and excess profits tax or the actual investment of the principal owners or stockholders is comparatively small. The test established by the statute with respect to capital is entirely different. That test is the nature of the *profession*

or business as indicated (*a*) by the kind of services it renders and (*b*) the extent to which capital is required to carry on such profession or business. If the use of capital is necessary or more than incidental, capital is a material income-producing factor and the corporation is not a personal service corporation. No corporation is a personal service corporation if it carries on business of a kind which ordinarily requires the use of capital, irrespective of whether the owners or stockholders have actually invested a substantial amount of capital.