DANIEL HOLCOMBE THOMAS, Senior District Judge.
 

 The bankrupt, James V. Pappas (hereinafter “Pappas”), appeals from the judgment of the district court which affirmed the bankruptcy court holding that a loan made to him by appellee, Merchants National Bank & Trust Company of Indianapolis (hereinafter “Merchants”), was induced by false pretenses or false representations and is, therefore, a non-dischargeable debt under the Bankruptcy Act § 17(a)(2), 11 U.S.C. § 35(a)(2) (1976).
 
 [1]
 
 The relevant facts sur
 
 *84
 
 rounding the loan transaction reveal that prior to 1976, Pappas had established an extensive banking relationship with Merchants. During this period, Pappas maintained several accounts with Merchants, in such names as James Pappas Company, James Pappas Company Investments and Pappas Properties.
 

 Pappas was engaged in the real estate development business and used Merchants’ Speedway, Indiana, branch office, for the majority of his credit needs. In 1973 and 1974 Merchants provided short-term financing to Pappas for the construction of three commercial buildings in Motif Professional Mall. Although two of the three financing arrangements were in the name of Pappas Properties, and the third was in the name of James Pappas Company, all disbursements by Merchants were to the account titled James Pappas Company.
 

 Pappas Properties was a partnership, while Pappas’ other companies were sole proprietorships. For extending credit, Merchants aggregated the credit limits extended to the partnership and Pappas individually. Pappas was given a $250,000 secured and $12,500 unsecured line of credit. David Mills, Merchants’ Speedway Branch Manager, first met Pappas in 1974. At that time Pappas was formally introduced to him “as one of our leading customers with an extensive credit relationship”.
 

 On April 8, 1975, Pappas entered Merchants and upon finding Mills absent, he met with David Brown, the Assistant Branch Manager. At trial, Brown testified that Pappas requested a $12,500 unsecured loan, which was to be used as working capital for Pappas Properties. This loan was approved and evidenced by a promissory note which Pappas executed on behalf of Pappas Properties; however, the money was deposited into the James Pappas Company account.
 

 Pappas returned to Merchants on April 10, 1975, and spoke with Brown about obtaining a $10,000 loan to purchase and develop Lot Number 7 in the Motif Professional Mall. Pappas presented Brown with a commitment for title insurance on Lot Number 7 in favor of Pappas and his wife, Rosemary Pappas. After obtaining approval, Brown prepared and Pappas executed a note for $10,000 and a mortgage on Lot Number 7 in the name of Pappas Properties.
 
 [2]
 
 The $10,000 was deposited that same day into the James Pappas Company account as had been the practice in the previous construction loans to Pappas for properties in Motif Professional Mall.
 

 On April 18, 1975, Pappas returned to Merchants and requested to borrow an additional $5,000 for development of Lot Number 7 and $15,000 to purchase Lot Number 6. Pappas presented to Brown a similar commitment for title insurance on Lot Number 6. Upon approval of both loans, Pappas signed promissory notes for $5,000 and $15,000 and executed a mortgage agreement with respect to Lot Number 6 on behalf of Pappas Properties. Merchants deposited the $20,000 from the two loans into the James Pappas Company account.
 

 On May 9,1975, Pappas again approached Brown and requested additional loans of $3,500 on each lot, for a total of $7,000. The advances were approved, notes in the name of Pappas Properties were executed for the loans and disbursements were made into the James Pappas Company account. Similarly, Pappas contacted Mills on June 4, 1975, and requested an additional $11,000 for further development of Lots Numbers 6 and 7. This loan was also approved. Pap-pas signed two $5,500 promissory notes on behalf of Pappas Properties and the money was again deposited into the James Pappas Company account.
 

 Thus, between April 10,1975, and June 4, 1975, Pappas borrowed $12,500 on an unsecured loan and $48,000 on loans secured by the mortgages on Lots Numbers 6 and 7 in the Motif Professional Mall. Without hav
 
 *85
 
 ing made any payments to Merchants, on December 8, 1975, Pappas renewed all the prior secured notes by two separate notes for $24,000 each, i. e., $24,000 for Lot Number 6 and $24,000 for Lot Number 7. Each note carried interest on the unpaid balance at the rate of eight and three-quarters percent per annum.
 

 Pappas never purchased or otherwise acquired any interest in Lots Numbers 6 and 7 in the Motif Professional Mall. Furthermore, he never advised Merchants that he was using the funds for purposes other than the purchase and development of Lots Numbers 6 and 7. On January 15, 1976, Pappas was adjudicated a “bankrupt” pursuant to his filing of a voluntary petition. On June 8, 1976, Merchants filed a four-count complaint in the United States Bankruptcy Court to determine the discharge-ability of the Pappas indebtedness to it pursuant to § 17(a)(2) of the Bankruptcy Act. Subsequently, Counts III and IV were voluntarily dismissed by Merchants. By an agreement dated November 15, 1976, Merchants and Walter Pygman, the only other partner in Pappas Properties, agreed to settle any claims against Pappas Properties for which Merchants might proceed against him by his payment of $19,995. This settlement was approved on December 13, 1976, by the Bankruptcy Court and the proceeds along with set-offs from other sources reduced the total indebtedness from $60,500 to $37,506.90.
 
 [3]
 
 At the evidentiary hearing on May 12, 1978, Merchants voluntarily dismissed Count II relating to the $12,500 unsecured loan. The Bankruptcy Court concluded that Pappas obtained loans for Pappas Properties from Merchants “upon materially false representations made with the intent to deceive [Merchants] and induce it to make such loans” and that Merchants detrimentally relied upon those misrepresentations. Pursuant to this finding, judgment was entered in favor of Merchants in the amount of $37,506.90 on September 11, 1978. This judgment was then appealed by Pappas to the United States District Court where it was affirmed with one clarification. The District Court noted that the finding of false pretenses and false representations did not apply to the dismissal of Count II
 
 [4]
 
 since the loan was made to Pappas as “working capital” for Pappas Properties.
 

 On this appeal, Pappas contends that: (1) the fraud or false pretenses necessary to make a debt nondischargeable pursuant to § 17(a)(2) was not present; and (2) Merchants improperly used the settlement monies of Walter Pygman to cancel the dis-chargeable unsecured debt of $12,500 and not simply reduce the secured debts of $48,-000.
 

 This suit having been filed in 1976 is governed by the 1898 Bankruptcy Act. By Congress enacting federal legislation on the subject bankruptcy, 11 U.S.C. § 1
 
 et seq.
 
 (1976), the individual states are preempted from acting in this area. The Bankruptcy Act § 17(c)(1), 11 U.S.C. § 35(c)(1) (1976), states, “[t]he bankrupt or any creditor may file an application with the court for the determination of the dischargeability of any debt.” Section 17(c)(2) then gives the Bankruptcy Court exclusive jurisdiction to determine the dischargeability of debts, claimed to be non-dischargeable under the clauses (2), (4) or (8) of § 17(a) of the Bankruptcy Act.
 
 See,
 
 1A Collier on Bankruptcy ¶ 17.16[6], at 1649 (14th ed. 1978).
 

 In the present case, Merchants filed its non-dischargeability application pursuant to § 17(a)(2), which § 17(c)(2) gives the Bankruptcy Court exclusive jurisdiction to determine. Merchants in its application alleged that Pappas made “false pretenses
 
 *86
 
 and false representations” pursuant to the various loans given Pappas between April 8, 1975, and December 8,1975. We are of the opinion that the Bankruptcy Court has exclusive jurisdiction to determine the meaning of false pretenses and false representations, without having to look to Indiana state law as Pappas would have the Bankruptcy Court do. We hold that under the facts of this case, that where the bankrupt is entrusted with money to be used for a specific purpose, and he has no apparent intention of using the money for that purpose, then a misrepresentation clearly exists upon which a debt can be properly held non-dischargeable. See, 1A Collier on Bankruptcy ¶ 17.16[3] at 1638 (14th ed. 1978).
 

 The Bankruptcy Court concluded that Pappas made intentionally false representations with the intent to deceive Merchants and induce it to make the various loans. This Court cannot overturn this decision unless the findings of the trial court are clearly erroneous. Bankr. Rule 810.
 
 See, Carini v. Matera,
 
 592 F.2d 378 (7th Cir. 1979). After reviewing all the evidence presented, this Court finds ample evidence to support the trial court’s findings. Pap-pas on numerous occasions represented the loans were needed to purchase and develop Lots Numbers 6 and 7. As Pappas never purchased or developed these lots, his intention to deceive Merchants seems apparent.
 

 Pappas further contends that on December 8, 1975, the various notes were renewed and became dischargeable at that time since: (1) no false written financial statement was given; and (2) no property or money was given in exchange for the renewals. We hold that the fraudulent representations were continuous from the date each loan was made and remained actionable by the relying party until he received notice to the contrary.
 
 Monier v. Guaranty Trust Co.,
 
 82 F.2d 252, 254 (2nd Cir.),
 
 cert, denied,
 
 298 U.S. 670, 56 S.Ct. 835, 80 L.Ed. 1393 (1936). On each occasion that Pappas visited Merchants, he made a continuing representation that the prior loans had been used for the purposes borrowed and that he would use the present loans to continue development of Lots Numbers 6 and 7. This being the case, the “renewal” on December 8, 1975, can be considered little more than a consolidation of the various loans. Pappas further contends that Merchants failed to use ordinary and reasonable care in its loan procedure and is, therefore, barred from claiming misrepresentation and fraud by Pappas. We find no evidence to support Pappas’ contention and are of the opinion that Merchants acted with reasonable procedure in handling loans to a respected and established customer.
 

 Pappas next contends that Merchants improperly used $12,500 of the $19,-995 settlement that Walter Pygman paid Merchants to cancel the April 8,1975, unsecured partnership debt. Pappas bases this contention upon the belief that his petition in bankruptcy totally discharged this $12,-500 unsecured debt. This would be a correct assumption by Pappas if the loan had been made to him individually; however, the loan was made to the partnership. The general rule of law with respect to partnerships is that each partner is liable jointly and severally for the claims against the partnership.
 
 See, In re Montgomery,
 
 532 F.2d 725 (9th Cir. 1976);
 
 Misco-United Supply, Inc.
 
 v.
 
 Petroleum Corp.,
 
 462 F.2d 75 (5th Cir. 1972);
 
 Intercontinental Leasing, Inc. v. Anderson,
 
 410 F.2d 303 (10th Cir. 1969);
 
 In re Bernstein,
 
 197 F.2d 378 (7th Cir. 1952);
 
 O’Neill v. United States,
 
 281 F.Supp. 359 (N.D.Ohio 1968),
 
 affirmed,
 
 410 F.2d 888 (6th Cir. 1969);
 
 United States v. Cranor,
 
 253 F.Supp. 600 (S.D.Ind.1966).
 

 Pursuant to the settlement agreement with Merchants, Pygman was settling all claims Merchants could assert against him as a partner of Pappas Properties. One of these potential claims was the $12,-500 unsecured debt for which Pygman was liable as a general partner. We are of the opinion that Merchants was justified in applying the settlement payment first against the unsecured debt and the balance against the remaining secured debts. Pappas is found to be without standing to object to how Merchants applies the settlement pay
 
 *87
 
 ments from a third party to the debts which he is attempting to escape.
 

 Based upon the foregoing, the Court determined that the appeal by Pappas is without merit and the judgment of the District Court is AFFIRMED.
 

 AFFIRMED.
 

 [1]
 

 . That section of the Bankruptcy Act provides, in pertinent part:
 

 § 17. Debts Not Affected by a Discharge a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as ...
 

 (2) ... are liabilities for obtaining money or property by
 
 false pretenses or false representations,
 
 or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive, or for willful and malicious conversion of the property of another;
 

 11 U.S.C. § 35(a)(2) (1976) (emphasis added).
 

 [2]
 

 . While the Bankruptcy Court’s findings were in accordance with Brown’s testimony as to the execution occurring on April 10, 1975, the District Court’s Order noted that the mortgage itself, which appears in the record as Plaintiffs Exhibit No. 2, shows on its face by way of the notarized signature, that Pappas executed the mortgage on April 11, 1975.
 

 [3]
 

 . Merchants used $12,500 to cancel the partnership’s outstanding unsecured debt. The balance of $7,495 was applied against the note relating to Lot Number 7. A second reduction of the Lot Number 7 note was made in the amount of $1,901.69 representing surplus proceeds from the sale of partnership real estate, and a third reduction in the amount of $1,096.41 was made from proceeds from Pap-pas’ personal banking account.
 

 [4]
 

 . Count II, pertaining to the $12,500 unsecured note, was dismissed by Merchants’ oral motion at the May 12, 1978, bankruptcy hearing, due to the settlement of this partnership debt by Pappas’ partner, Walter Pygman.