In re Paul Calvin REDFEARN, Debtor.

PILOT POINT NATIONAL
BANK, Plaintiff,

v.

Paul Calvin REDFEARN, Defendant.

Civ. A. No. S–82–43–CA.
Bankruptcy No. S–81–00395.
Adv. No. A–81–139.

United States District Court,
E.D. Texas,
Sherman Division.

March 21, 1983.

Vernon O. Teofan, Ungerman, Hill, Ungerman, Angrist, Dolginoff, Teofan & Vickers, Dallas, Tex., for plaintiff.

Paul Calvin Redfearn, pro se.

## MEMORANDUM OPINION

JUSTICE, Chief Judge.

On September 2, 1981, Paul Calvin Redfearn ("Debtor"), of Aubrey, Texas, filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. 11 U.S.C.S. § 301 and § 701 *et seq.* On December 11, 1981, the Pilot Point National Bank ("Bank") filed a complaint to determine dischargeability of debt and an objection to discharge. A trial before the Bankruptcy Judge was held on January 21, 1982, after which that judge entered findings of fact and conclusions of law, denying the Bank's complaint and objection, and granting the Debtor his statutory discharge. 11 U.S.C.S. § 727.

The Bank raises on appeal to this court the single issue of whether Debtor's discharge should have been denied on the grounds that the Debtor failed to keep or preserve sufficient records from which his financial condition or business transactions might be ascertained. The Debtor, who appeared *pro se* before the Bankruptcy Judge, has filed no briefs in response.

This court "need give no deference to the findings of the bankruptcy judge." Interim Bankruptcy Rule (e)(2)(B), published in U.S. C.S. Advance, p. 9 (January, 1983).

The Bankruptcy Judge found as facts—and they are uncontested—that the Debtor was a young man who had worked all of his life as a self-employed small farmer and rancher. His education extended no further than high school. The Bankruptcy Judge found that the Debtor, prior to bankruptcy, owned a pick-up truck, a goose-neck trailer, and 46 head of mixed cattle, includ-

ing calves. The Bank was under the impression that the Debtor had owned at least 64 cattle, and, perhaps, as many as 81. The Bankruptcy Judge concluded that the Debtor was

> not a sophisticated businessman, but rather a young man with only a high school education who was trying to get a start in a business in which he considered himself qualified; that is, in farming and ranching, and was, therefore, not under the same duty to maintain business records and books in a manner in which a mercantile or manufacturing business man might be. The Court further concludes that the "Debtor" was an honest "Debtor" in his business dealings and there was no intent on the part of this "Debtor" to defraud, hinder, or delay any creditor in this proceeding.

Findings of Fact and Conclusions of Law, p. 2. (March 26, 1982).

The Bankruptcy Code of 1978 provides:
(a) The court shall grant the debtor a discharge, unless—

> · * · * * * * *

> (3) the debtor has . . . failed to keep or preserve any recorded information, including books, documents, records and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case; . . .

11 U.S.C.S. § 727(a)(3). The Bank contends that the Bankruptcy Judge "clearly erred" because the Debtor offered no justification for his lack of record-keeping, or insufficient justification.

■ Section 727(a)(3) codifies an objection to discharge available to creditors that was previously set forth at § 14(c)(2) of the Bankruptcy Act of 1898, 11 U.S.C. § 32(c)(2). Although the burden of proof for all objections to discharge has always lain with the objector, the old § 14(c)(2) contained a specific proviso, calling for a shift in the burden of proof to the bankrupt, once a creditor had demonstrated a *prima facie* case of insufficient record-keeping. *See generally Matter of Oesterle,* 651 F.2d 401 (5th Cir.1981). However, the pro-

viso was specifically superseded by Bankruptcy Rule 407 (effective October 1, 1973), which restored the burden of proof to the objector, and provided that that burden remain with the objector throughout the proceedings. *Matter of Oesterle,* 651 F.2d at 403; *Matter of Decker,* 595 F.2d 185 (2nd Cir.1979); *Matter of Martin,* 554 F.2d 55, 58 n. 1 (2nd Cir.1977). Courts have enforced this rule, even though mindful

> that the objector is now in the difficult and anomalous position of trying to prove a negative by showing the absence of any justification.

*Matter of Oesterle,* 651 F.2d at 403.

> With the burden of persuasion on the [objector], the absence of an explanation by [the bankrupt] is not enough in itself to compel the bankruptcy judge to accept the [objector's] allegations. A trial judge "is not compelled to accept a plaintiff's testimony even if uncontradicted. The plaintiff has the burden of proof, and the trial judge may find that the testimony does not carry that burden."

*Matter of Decker,* 595 F.2d at 190.

With the adoption of the Bankruptcy Code of 1978, Congress manifestly maintained the policy of Rule 407, since the new section 727(a)(3) deletes entirely the proviso of § 14(c)(2), which had been the exception to the rule, and which Rule 407 superseded. Rule 407 itself also remains in effect. *In re Wise,* 6 B.R. 867 (Bkrtcy.M.D.Fla.1980).

■ Against this background, it is plain that the Bankruptcy Judge did not err. He properly "focused upon the size and nature of [the debtor's] self-employment," *Oesterle,* 651 F.2d at 404, and concluded that "it was not of such complexity that the keeping of books and records was necessary." *Bartolotta v. Lutz,* 485 F.2d 227, 229 (5th Cir.1973); *Oesterle,* 651 F.2d at 404. The Fifth Circuit has held that

> Obviously, an unsophisticated wage earner dealing primarily in cash should not be denied a discharge because he failed to keep books of account.[12]

[12] Other examples are certainly conceivable: small *farmer,* traveling salesman, or student. . . .

*Goff v. Russell Co.,* 495 F.2d 199, 201 (5th Cir.1974) (emphasis added).

In *Oesterle,* the Court of Appeals held that a bankruptcy judge had not abused the "wide discretion entrusted . . . to the finder of fact in the specialized field of bankruptcy law" when he found that a tax consultant had justifiably kept no records over a four-year period, including one year in which he had taken $19,000 in deductions on his federal income tax return. In the case *sub judice,* the bankruptcy judge reasonably concluded that a small farmer and rancher with little education was justified in keeping no records. The bankruptcy judge also concluded, from demeanor evidence and other evidence in the record [1], that the debtor was an "honest" debtor, and entitled to the fresh start provided by the bankruptcy laws. This was in accord with

> the well settled principles that the right to a discharge is statutory, and that Section 14 of the Bankruptcy Act [now 11 U.S.C. § 727] must be construed strictly as against the objector and liberally in favor of the bankrupt.

*Matter of Decker,* 595 F.2d at 187.

It is, therefore,

ORDERED that the decision of the Bankruptcy Judge be, and it is hereby, AFFIRMED.

---

1. The actual controversy between the Bank and Debtor concerned the whereabouts or existence of certain cattle. The Bank believed that it had a security interest in 64 cattle. The Bank three times prior to bankruptcy sent inspectors to the Debtor's property, and one inspector had recorded that the Debtor owned 81 cattle. The Debtor stated at the hearing, however, that his cattle shared pasture with cattle he did not own, and that he had never represented to anyone that he owned more than 46 cattle. After the filing of the petition in bankruptcy, the Bank repossessed all of Debtor's cattle, finding, at that time, only 35 live animals, and at least three dead ones.

The Bankruptcy Judge in assessing the evidence before him, properly stressed the significant fact that the Bank did not offer in evidence the live testimony of the inspectors themselves, but, instead, relied upon the unexplained hearsay records of what those inspectors thought they had seen. He also properly considered the Debtor's demeanor evidence. He considered the possibility that the difference between the forty-six (46) and sixty-four (64) cattle might have been a typographical error. Finally, he may have felt that the Debtor had made diligent efforts to pay his debts by many means, including shooting himself, in an unsuccessful attempt to make available to his creditors his $60,000 life insurance policy.