In the Matter of Henry David
WILSON, Debtor.

John A. MILAM, Plaintiff,

v.

Henry David WILSON, Defendant.

Bankruptcy No. 82–50719–Mac.
Adv. No. 82–5304.

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

Oct. 7, 1983.

G. McGregor Jordan, Jr., Harris, Watkins, Davis & Chambless, Macon, Ga., for plaintiff.

John W. Chambers, Jr., Chambers, Chambers & Chambers, Atlanta, Ga., for defendant.

MEMORANDUM OPINION ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT AND OBJECTION TO DISCHARGE

ROBERT F. HERSHNER, Jr., Bankruptcy Judge.

STATEMENT OF THE CASE

On July 6, 1982, Defendant Henry David Wilson filed with this Court his voluntary

petition under Chapter 7 of the Bankruptcy Code. On October 7, 1982, Plaintiff John A. Milam filed a "Complaint to Determine Dischargeability of Debts under 11 U.S.C. 523, and Objecting to Discharge under 11 U.S.C. 727." Plaintiff's complaint came on for trial by the Court on July 19, 1983.

After reviewing the evidence and considering the arguments of counsel, the Court is of the opinion that Defendant should be denied a discharge in bankruptcy. In support of its conclusion, the Court publishes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Defendant graduated from the University of Georgia in 1963 with a Bachelor of Business Administration degree and is a certified public accountant. Defendant has been engaged in accounting since his graduation and was employed by the accounting firm of Arthur Young & Company for an unspecified period of time. In 1978, Defendant was engaged in his own accounting business in the Atlanta, Georgia area and was considering expanding his client base.

Plaintiff was also an accountant and practiced under the name of Milam & Milam. Plaintiff had two offices, one in Atlanta and the other in Thomaston, Georgia. Because of certain business considerations, Plaintiff decided to sell his Thomaston practice and placed a blind ad in one of the Atlanta newspapers. Defendant responded to Plaintiff's blind ad, and the two met to discuss a possible sale.

After what best can be described as brief negotiations, Plaintiff and Defendant signed a sales agreement dated June 16, 1978. The agreement contained a formula for the calculation of the ultimate purchase price of the Thomaston practice. The formula was based on the monthly billings for a twelve-month period. The purchase price was to be paid by an initial down payment of $2,500.00 and subsequent monthly payments. Defendant paid Plaintiff the initial down payment, but has made no other payments to Plaintiff.

It is uncontested that certain problems existed at the Thomaston office at the time of the sale, and that these problems resulted in Defendant having to perform a substantial amount of accounting services for some of Plaintiff's former clients free of charge. It is less than clear to what extent Plaintiff was aware of the problems prior to the sale and to what extent Defendant was made aware of the problems prior to the sale of the Thomaston practice.

A considerable amount of time in the trial of this adversary proceeding was consumed by the parties presenting a detailed analysis of various bank accounts, but because of the Court's decision in this adversary proceeding, the Court need not make detailed findings of fact on the various bank accounts.

The evidence is that Defendant purchased Plaintiff's Thomaston practice in June of 1978, and that Defendant closed the Thomaston practice when he filed his bankruptcy case on July 6, 1982. Defendant's wife worked with him in the Thomaston practice, and the evidence reveals that she ran the Thomaston office on a day-to-day basis. Defendant's wife paid both business and personal bills out of the Thomaston office's checking account, and no effort was made by Defendant to ensure that the personal and business expenses were separated.

During the four years that Defendant operated the Thomaston accounting practice, the practice averaged gross receipts of $40,000.00 to $45,000.00 per year. Defendant admits that for the years 1980, 1981, and 1982, the only business record he maintained for the Thomaston practice was a single checking account from which both business and personal expenses were paid. Defendant states that, in his view, this was all that was required for him to account for his business affairs in the Thomaston practice. Defendant has not filed a federal income tax return since 1978.

Because Defendant did not make the monthly payments as required by the June 16, 1978 sales agreement, Plaintiff brought suit against Defendant in the Superior Court of Dekalb County, Georgia. As a

result of the suit, Plaintiff was awarded a judgment against Defendant in the amount of $57,569.00 on May 22, 1980. This is one of the debts that Defendant seeks to discharge in his bankruptcy case.

Defendant has a prior history of bankruptcy. In May of 1976, Defendant filed a voluntary straight bankruptcy petition in the United States Bankruptcy Court for the Northern District of Georgia, and he subsequently received a discharge from his then-existing debts.

## CONCLUSIONS OF LAW

Plaintiff asserts five grounds in his complaint for the Court to deny Defendant a discharge in bankruptcy or for the Court to find that Defendant's debt to Plaintiff is nondischargeable in bankruptcy. The five grounds are as follows:

1. That Defendant entered into an agreement to purchase Plaintiff's Thomaston practice without an intention to pay the purchase price.

2. That Defendant improperly used money in a business checking account.

3. That Defendant failed to maintain adequate books and records on the Thomaston practice from which the financial condition of the business could be ascertained.

4. That Defendant transferred and co-mingled assets with the intent to remove his assets from the reach of creditors.

5. That Defendant made false statements at the 341(a)[1] meeting of creditors.

■ When a party objects to the discharge of a debtor, that party bears the burden of proving that the case falls within one of the statutory exceptions to discharge. R.Bankr.P. 407; *Home Indemnity Co. v. Oesterle (In re Oesterle),* 651 F.2d 401 (5th Cir.1981) (Unit B), *cert. denied,* 456 U.S. 989, 102 S.Ct. 2268, 73 L.Ed.2d 1283 (1982). After carefully considering the evidence presented, the Court is of the opinion that Plaintiff has sustained his burden on the third ground. Because the third ground is sufficient to bar Defendant's discharge, the Court need not address the other grounds.

■ Plaintiff, in his third ground for objection to Defendant's discharge, alleges that Defendant failed to maintain adequate business accounts and records. The objection is based on section 727(a)(3) of the Bankruptcy Code, which provides:

(a) The court shall grant the debtor a discharge, unless—

. . . .

(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

11 U.S.C.A. § 727(a)(3) (West 1979).

■ Section 727(a)(3) is intended "to enable creditors, with the assistance of proper books and records, to ascertain the true status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge." 4 Collier on Bankruptcy ¶ 727.-03[1] (15th ed. 1983). Section 727(a)(3) requires that a debtor produce some accurate written information that the creditors and trustee can rely on in tracing the debtor's financial history during the period preceding his bankruptcy. *Tucker v. Devine (In re Devine),* 11 B.R. 487, 4 Collier Bankr. Cas.2d 732 (Bkrtcy.D.Mass.1981). Records are adequate when they are kept "so as to reflect, with a fair degree of accuracy, the debtor's financial condition and in a manner appropriate to his business." 4 Collier on Bankruptcy ¶ 727.03[3] (15th ed. 1983) (footnotes omitted).

The United States Court of Appeals for the former Fifth Circuit has addressed the question of what are adequate books and records under section 14(c)(2) of the Bank-

---

1. 11 U.S.C.A. § 341(a) (West 1979).

ruptcy Act.[2] In *International Shoe Co. v. Lewine,* 68 F.2d 517, 518 (5th Cir.1934), the court noted:

It is intended that there be written evidence orderly made and preserved from which the present financial condition of the bankrupt and his business transactions for a reasonable period in the past may be ascertained with substantial completeness and accuracy, to serve as a substitute for or check against his oral statements. The transactions need not be stated in full detail if they are so identified that inquiry can be made about them....

■ The requirement that a debtor maintain business records is not absolute; a debtor nevertheless may receive a discharge if the failure to keep records is "justified under all of the circumstances." In *Goff v. Russell Co. (In re Goff),* 495 F.2d 199 (5th Cir.1974), the former Fifth Circuit concluded that whether a bankrupt is justified in failing to keep records depends on the facts and circumstances of a particular case.

The failure to keep adequate books or records may often be "justified under all the circumstances." Obviously, an unsophisticated wage earner dealing primarily in cash should not be denied a discharge because he failed to keep books of account. A higher standard of care is required, however, from a merchant actively engaged in credit transactions. Considerations relating to the assets, liabilities and complexity of the business are preponderant.

*Id.* at 201–02 (footnotes omitted). In a footnote, the court noted: "Other examples are certainly conceivable: small farmer, traveling salesman, or student. Far from carrying any derogatory connotation this grouping merely indicates that normal people in these classifications have uncomplex financial affairs which do not require books

or substantial records." *Id.* at 201 n. 12 (citation omitted). *See also In re Weismann,* 1 F.Supp. 723 (D.N.Y.1932) (discharge denied bankrupt who fails to keep records unless his situation was such that a normal person under similar circumstances would not have kept books and records).

Collier on Bankruptcy expresses a similar view:

If the occupation or business is of a kind in which normal men would not keep books or records, failure by the debtor so to do does not bar his discharge .... A traveling salesman, a wage earner, a priest or other person dealing, in general, in cash, and not engaged in a business wherein credit is extended him so that a duty to creditors arises, may not be obliged to keep books or records. It has even been said that a business may be so small that no books or records are required to be kept although it would seem that not the size of the business but its complexity fixes the bounds of the duty.

4 Collier on Bankruptcy ¶ 727.03[3] (15th ed. 1983) (footnotes omitted).

■ From the above discussion, the Court concludes that the determination of whether a debtor is justified in failing to keep adequate books and records depends on the circumstances of each case. The issue of justification depends largely on what a normal, reasonable person would do under similar circumstances. The inquiry should include the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice.

In this adversary proceeding, the Court is convinced that Defendant did not keep adequate books and records. Defendant has

---

**2.** Section 14(c)(2) of the former Bankruptcy Act provided:

(c) The court shall grant the discharge unless satisfied that the bankrupt has ... (2) destroyed, mutilated, falsified, concealed, or failed to keep or preserve books of account or records, from which his financial condition

and business transactions might be ascertained, unless the court deems such acts or failure to have been justified under all the circumstances of the case;

Law of July 1, 1898, ch. 541, § 14(c)(2), 30 Stat. 550 as amended (repealed 1979).

not maintained accounts and ledgers in the Thomaston business since 1979. Nor has Defendant filed a tax return since 1978. The only record of receipts and disbursements made by Defendant since 1980 is in a checkbook. Defendant's checkbook records reflect only those receipts that were actually deposited in the checking account and in no way enable a creditor or the trustee to verify the total receipts of the Thomaston practice. Any payment (e.g., a preferential payment) not made through the checking account would go undetected by creditors, if not disclosed by Debtor. Also, this checking account was used to pay both personal and business expenses. Clearly, it cannot be said that Defendant maintained sufficient records in his Thomaston practice.

The Court can perceive of no justification for Defendant's failure to keep adequate records. Defendant's Thomaston practice had gross revenues of approximately $40,-000.00 to $45,000.00 per year. The Court is of the opinion that this volume of business warrants a more accurate method of accounting than a simple checkbook record. *See Savannah Valley Carpets v. Ellison (In re Ellison),* No. 81–30184–Ath (Adv.Proc. No. 82–3008), —— B.R. —— (Bkrtcy.M.D. Ga.1983) (discharge denied under section 727(a)(3) because construction business that grossed $315,000.00 during the eleven months prior to bankruptcy required better records than cancelled checks and bank statements).

Moreover, Defendant is a certified public accountant engaged in an accounting practice. This is not the case of an unsophisticated wage earner who is unfamiliar with business practices. Rather, Defendant is specially trained in the ways of accounting, is certified by the state as having education and experience in accounting,[3] and has practiced as an accountant for approximately eighteen years. Under these circumstances, the Court cannot condone Defendant's failure to keep adequate books and records. It cannot be said that a reasonable person in Defendant's position would have

relied on a checkbook as his only business record.

---

3. *See* Official Code of Ga.Ann. § 43–3–6 to –12 (Michie Supp.1983).