In re Duwayne M. REITZ and Kathryn H. Reitz, Debtor.

LEVERAGE LEASING CORP., Plaintiff-Appellee,

v.

Duwayne M. REITZ and Kathryn H. Reitz, Defendants-Appellants.

No. 86 C 3571.

United States District Court, N.D. Illinois, E.D.

Dec. 12, 1986.

Michael H. Moirano, Joyce & Kubasiak, Chicago, Ill., for plaintiff-appellee.

Jeffrey Strange, Wilmette, Ill., for defendants-appellants.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

*Background*

In or about February 1982, DuWayne Reitz ("Reitz") answered a newspaper advertisement placed by Levy International Financial Enterprises, Inc. ("Levy") to inquire about the purchase of video games. Reitz decided to purchase a package from Levy costing $85,000. Leverage Leasing Corp. ("Leverage"), which had experience in financing purchases by Levy customers, agreed to finance the acquisition after examining financial information provided by the Reitzes. Reitz agreed to lease 25 games and a coin changer from Leverage, which in turn agreed to pay Levy for that equipment. Reitz agreed to pay Leverage 30 equal monthly installment payments totaling $135,477.60.

In March 1982, Reitz, his wife Kathryn, and Leverage executed copies of all the pertinent lease documents. Mr. Lewis Calliento, vice-president of Leverage, testified that the deal would not have been made had Kathryn Reitz not supplied financial information or not signed the lease. How-

ever, she never took an active position in Reitz's business.

When Reitz signed the lease documents, and made the first lease payment, Leverage wired $85,000 to Levy. The transfer of money occurred, and Reitz became obligated to repay, even though no games had yet been delivered; Reitz had agreed to accept the equipment "As Is, Where Is." On the same day that Leverage transferred the money to Levy, Levy wrote a check payable to Reitz in the amount of $28,078.20. Reitz claimed this money was to be used to decorate and equip the game room. However, the check was deposited to the account of T & R Brokers, Inc. Reitz was one of the principals of T & R. Both Reitz and Levy admitted the $28,000 was not used to decorate or equip the game room, but was used by Reitz for other purposes.

Games were delivered slowly and Reitz complained. Reitz or Ronald Jackson, described as a "partner" of Reitz, acknowledged delivery of three shipments of games. Reitz complained that some of the games did not work and others were counterfeit. No further payments were made on the lease.

On April 28, 1982, Leverage sued the Reitzes in the Circuit Court of Cook County, seeking to replevin the video games and equipment previously delivered to Reitz. Reitz agreed to return four games, all that he claimed to have received from Levy. However, when the four games were delivered to Leverage's warehouse, the electron-

ic components of the games had been removed, leaving empty cabinets.

On May 10, 1982, Leverage filed a four-count complaint in the Circuit Court of Cook County against, *inter alia,* DuWayne and Kathryn Reitz. The suit sought damages and rescission of the lease, alleging fraud, violation of the Consumer Fraud and Deceptive Business Practices Act, and breach of contract.

The next day, Reitz, through T & R Brokers, sold three of Leverage's video games to William Chase. Leverage was never informed of this sale, nor did it give approval for the sale. The proceeds of the sale were converted to Reitz's personal use. Leverage was never able to recover these machines.

On May 19, 1983, the Circuit Court entered judgment for Leverage against Reitz in the amount of $126,445.75. The Circuit Court did not state which count(s) of Leverage's complaint were the basis for the award of summary judgment.

On June 19, 1983, DuWayne and Kathryn Reitz filed for protection under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 *et seq.* (Unless otherwise noted, all statutory references in this opinion are to Title 11 of the United States Code.) Leverage, in an adversary proceeding against the Reitzes, objected to discharge pursuant to secs. 727(a)(2)(A) and (a)(3),[1] and asserted that the Circuit Court judgment obtained in its favor was non-dischargeable pursuant to secs. 523(a)(2)(A), (a)(4), and (a)(6).[2]

---

1. Sections 727(a)(2)(A) and (a)(3) provide:
   (a) The court shall grant the debtor a discharge, unless—
   (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
   (A) property of the debtor within one year before the date of the filing of the petition ...
   (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such

act or failure to act was justified under all of the circumstances of the case....

2. Sections 523(a)(2)(A), (a)(4), and (a)(6) provide:
   (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
   (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
   (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition ...
   (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny ...

The bankruptcy court granted Kathryn Reitz a complete discharge, ruling that "Kathryn Reitz was not directly connected with the business and transactions of her husband. She signed what documents her husband asked her to sign. While this is improper it does not establish intent to defraud and there has been insufficient evidence to establish such intent." (Order of 4/2/86, p. 5.)

The bankruptcy court held that the Circuit Court judgment entered against Du-Wayne Reitz was non-dischargeable under secs. 523(a)(2)(A) and (a)(6). The bankruptcy court stated:

DuWayne's testimony was confusing, contradictory at points, and generally unconvincing in scope. No accounting was made by debtor as to funds he received from Levy or the sale of the games. It is clear from the evidence that games were cannibalized while in his control, some were furtively dealt with so as to deter Leverage from locating them, some were wrongfully sold and the funds converted to personal use and he received an unauthorized and undisclosed kickback of funds from Levy, in effect out of Leverage funds, which were misdirected to personal use unassociated with his obligation to Leverage. The court finds that DuWayne Reitz's behavior was actually fraudulent and exhibits the requisite malefic intent to find the debt compalined [sic] of non-dischargeable.

(Order of 4/2/86, p. 4.)

And lastly, the bankruptcy court refused to deny DuWayne Reitz a discharge under sec. 727.

Under the circumstances of the instant matter, the court does not find sufficient ground to totally deny discharge. While the acts of fraud complained of herein provide a basis of non-dischargeability the defendant did testify and reasonably comply with orders of the court. His actions do not invoke the provisions of 727(a)(2)(A). Further, there is no re-

(6) for willful and malicious injury by the debtor to another entity or to the property of

quirement under law that books and records be made but they must be produced if kept. Defendant testified that no records were initially kept, except a check book. Consequently, 727(a)(3) does not come into play. The court finds there is insufficient grounds to deny discharge to debtors.

(Order of 4/2/86, pp. 3–4.)

Reitz appeals from that portion of the order denying him discharge under sec. 523. Leverage appeals from that portion refusing to deny Kathryn Reitz a discharge under sec. 523, and that portion discharging the debtors under sec. 727.

*Discussion*

I. *Kathryn Reitz*

The bankruptcy court's determinations that Kathryn Reitz was not directly connected with the business and did not possess an intent to defraud are factual determinations we are bound to accept unless clearly erroneous. Bankr. Rule 8013. We do not believe the bankruptcy court's determination was clearly erroneous. Determinations of intent are particularly for the trier of fact to make and should not be reversed except in the most extreme cases. *See, e.g., In re Neis,* 723 F.2d 584, 588–89 (7th Cir.1983).

■ Because Kathryn Reitz had no intent to defraud and no direct involvement in the business, there exist no grounds in sec. 727 on which to deny her a discharge. Section 727(a)(2)(A) only applies when the debtor acts with intent. Section 727(a)(3) cannot apply because there is no allegation that Kathryn Reitz failed to keep books and records relating to her estate, as distinct from her husband's.

■ Furthermore, no grounds exist in section 523 on which to hold the Circuit Court judgment against Kathryn Reitz non-dischargeable. Section 523(a)(2)(A) excludes from a section 727 discharge those debts obtained by false pretenses, a false

another entity. . . .

representation, or actual fraud. There is no indication in the record that Kathryn Reitz obtained any money, property, services, etc., by false pretenses. There is no indication that she made any false representations. And the bankruptcy judge found she did not commit any fraud. Hence, section 523(a)(2)(A) is inapplicable.

Section 523(a)(4) is also inapplicable. Kathryn Reitz clearly was not in a fiduciary relationship with Leverage, nor did she obtain a debt by embezzlement or larceny (each of which requires intent).

Finally, section 523(a)(6) is inapplicable because, by its terms, the section requires "willful and malicious injury" to Leverage's property. Since Kathryn Reitz had no intent to harm anyone, this section cannot prevent Leverage's judgment against her from being discharged. We affirm the bankruptcy court's discharge of Kathryn Reitz.

## II. *DuWayne Reitz—§ 523*

The bankruptcy court excluded the judgment obtained by Leverage against DuWayne Reitz from the general discharge granted. Reitz now appeals. A district court reviewing the decision of a bankruptcy court must give substantial deference to its findings of fact but is free to review its conclusions of law *de novo*. *In re Consolidated Bancshares, Inc.*, 785 F.2d 1249 (5th Cir.1986).

### A. *Section 523(a)(2)(A)*

Reitz argues that Leverage failed to prove by clear and convincing evidence that he obtained money, property, services, or credit by false pretenses, false representations or actual fraud. It is true that the standard of proof under sec. 523(a)(2)(A) is clear and convincing evidence. *In re Kimzey*, 761 F.2d 421, 424 (7th Cir.1985). We believe, however, that sufficient evidence was presented to enable the bankruptcy court to meet this clear and convincing standard and hold that DuWayne Reitz committed actual fraud.

Evidence was presented that Reitz obtained money from Leverage and immediately set on a course of conduct to defraud Leverage. He denied receiving the video games. He charged that those he did receive were counterfeits. After agreeing to return four machines, he "cannibalized" them by removing their electronic components. He transferred three other machines to William Chase without Leverage's knowledge or consent. All this conduct occurred in a three-month period (March 11, 1982 to June 4, 1982). The bankruptcy court could infer from these events that Reitz intended from the very start to accept Leverage's money but to never pay it back. The purchase of goods on credit or borrowing of money by a debtor who does not intend to repay the sums borrowed, constitutes false representation. *See Montgomery Ward v. Borah*, 36 B.R. 535 (Bankr.M.D.Fla.1983); *First Tennessee Bank v. Wilson*, 32 B.R. 772 (Bankr.E.D. Tenn.1983).

Reitz's acceptance of the kickback from Levy also could constitute an exception to discharge under subsection (a)(2)(A). When a debtor is entrusted with money to be used for a specific purpose, and he has no apparent intention of using the money for that purpose, then a misrepresentation clearly exists upon which a debt can be properly held non-dischargeable. *In re Pappas*, 661 F.2d 82, 86 (7th Cir.1981) (decided under § 17(a) of the 1898 Bankruptcy Act); 3 Collier on Bankruptcy ¶ 523.08 (15th ed. 1983) (hereinafter "Collier"). Whether the kickback was intended to be used to decorate Reitz's game room or not, it is undisputed that the money was never so used. There is sufficient evidence to enable the bankruptcy court to determine that at the time the deal was executed, Reitz had no intention of ever using the $28,000 to decorate the game room. Therefore, the bankruptcy court correctly found the judgment non-dischargeable on the grounds the money was obtained under false pretenses.

### III. *DuWayne Reitz—§ 727*

The bankruptcy court refused to deny DuWayne Reitz a discharge under sec. 727, holding (1) his actions did not invoke subsection (a)(2)(A), and (2) no records were kept so subsection (a)(3) did not come into play (Order of 4/2/86 at pp. 3–4).

#### A. Section 727(a)(2)(A)

A creditor objecting to discharge under section 727(a)(2)(A) must show: (1) the act complained of occurred within one year before the filing of the petition; (2) with actual intent to hinder, delay or defraud a creditor; (3) the act was that of the debtor or his duly authorized agent; and (4) that that act consisted of transferring, removing, destroying or concealing any of the debtor's assets. *In re Kessler*, 51 B.R. 895, 898 (Bankr.D.Kan.1985).

■ In the present matter, we need look no further than the first requirement to decide that subsection (a)(2)(A) does not bar Reitz's discharge. The Reitzes filed their petition under Chapter 7 on June 29, 1983. Yet, all the allegedly fraudulent conduct occurred more than one year earlier, from March 9 to June 4, 1982. Reitz allegedly converted $28,000 earmarked for game room decoration to his own use in March 1982. He improperly sold three video games to William Chase in May 1982. And he improperly removed the electronic components of the video games, thereby destroying their value, in May or early June 1982. The only event which occurred within one year of the filing of a bankruptcy petition was the entry of judgment against Reitz in the Circuit Court of Cook County. There is no allegation that Reitz transferred, concealed, mutilated or destroyed any of his assets from June 29, 1982 to June 29, 1983. Therefore, we affirm the bankruptcy court's determination that denial of discharge was improper under section 727(a)(2)(A).

#### B. Section 727(a)(3)

The bankruptcy court stated "there is no requirement under law that books and records be made but they must be produc-ed if they are kept" (Order of 4/2/86 at 4). We believe this misstates the law; hence, we remand for further proceedings.

Section 727(a)(3) is intended "to enable creditors, with the assistance of proper books and records, to ascertain the true status of a debtor's affairs and to test the completeness of the disclosure requisite to a discharge." 4 Collier ¶ 727.03[1]; *In re Wilson*, 33 B.R. 689, 691 (Bankr.M.D.Ga. 1983). Collier states that "where the records fail to explain business transactions whereby a large shrinkage of assets results, a discharge should be refused upon the ground of failure to keep proper books or records." 4 Collier ¶ 727.03; *In re Braidis*, 27 B.R. 470, 473 (Bankr.E.D.Pa. 1983).

The bankruptcy court must consider all a debtor's circumstances in deciding whether his failure to keep adequate records was justified. *In re Horton*, 621 F.2d 968, 972 (9th Cir.1980) (decided under sec. 14(c)(2) of the 1898 Bankruptcy Act). The bankruptcy court in the present case has made no evaluation of the adequacy of Reitz's records and, if inadequate, whether the failure to keep adequate records is justified. If the bankruptcy court determines that Reitz failed to keep adequate records and that his failure was unjustified, it must deny Reitz a discharge under section 727(a)(3).

■ The burden is initially on the objecting creditor to show the debtor's records are inadequate. Then the burden shifts to the debtor to justify the lack of adequate records. *Horton*, 621 F.2d at 972. The adequacy of a debtor's books and records turns on whether "the present financial condition of the [debtor] and his business transactions for a reasonable period in the past may be ascertained with substantial completeness and accuracy." *In re Wilson*, 33 B.R. 689, 692 (Bankr.M.D. Ga.1983) quoting *International Shoe Co. v. Lewine*, 68 F.2d 517, 518 (5th Cir.1934). Whether a debtor's failure to keep ade-

quate records depends on the facts of the particular case. "The inquiry should include the education, experience and sophistication of the debtor; the volume of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice." *Id.*

Whether a debtor's records are adequate and whether his failure to keep records is justified are questions of fact, it is for the bankruptcy court to make the determinations in the first instance. After the bankruptcy court determines whether Reitz's records were adequate or his failure was justified, our appellate review is limited to whether the bankruptcy court had abused its wide discretion in holding for Reitz or Leverage. *In re Redfearn*, 29 B.R. 739, 741 (E.D.Tex.1983).

### IV. *Amount of Debt*

The final issue raised on appeal by Reitz is whether the amount of the debt held non-dischargeable under sec. 523, $126,000, is excessive. We agree with the bankruptcy court that this question has already been conclusively determined by the Circuit Court of Cook County. While the Circuit Court judgment is not conclusive on the issue of fraud because a determination of fraud was not necessary to that judgment, *see In re D'Annolfo*, 54 B.R. 887 (Bankr.D.Mass.1985), it is *res judicata* as to the amount of the debt. We are in a proceeding collateral to the Circuit Court judgment, akin to a collection proceeding brought in a sister state. We must give full faith and credit to the Illinois court, and we affirm the amount of the non-dischargeable debt.

### Conclusion

Accordingly, the decision of the bankruptcy court is affirmed in part and reversed in part, and remanded for further proceedings in accordance with this opinion.