In re Joseph CORTESE, Jr., and Cecelia C. Cortese, Debtors.

ST. MARY'S CHURCH OF AMSTERDAM, NEW YORK, Plaintiff,

v.

Joseph CORTESE, Jr., Defendant.

Bankruptcy No. 86–04027–BKC–AJC.
Adv. No. 897–0161–BKC–AJC–A.

United States Bankruptcy Court, S.D. Florida.

Aug. 12, 1987.

Richard J. Stone, Wood, Lucksinger & Epstein, Co-Counsel, Miami, Fla., John W. Clark, Tobin and Dempf, Albany, N.Y., for plaintiff.

Joseph and Cecelia Cortese, debtors, pro se.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. JAY CRISTOL, Bankruptcy Judge.

This case came on to be heard on the complaint of St. Mary's Church of Amsterdam, New York against Joseph Cortese, Jr. Trial was held in Fort Lauderdale on Monday, July 27, 1987.

The church alleges that it entered into a contract with Joseph Cortese, Jr. to restore its organ and that Mr. Cortese falsely represented that he needed money to pay for parts. The church made substantial advances to Mr. Cortese. He forwarded some of the money to Organ Supply Industries, Inc. It appears that Mr. Cortese substantially underbid the job. The record indicates that he normally works on a markup of 50 percent. Ultimately, it took about $55,000 in parts to complete the restoration of the church's organ which Mr. Cortese completed after various negotia-

tions and dealings with the church and its attorneys. The church advanced an additional approximate $30,000 to cover these parts. The total contract with certain additions was for $81,000. The church paid approximately $71,000 to Mr. Cortese. After taking the appropriate credits remaining on the contract, the restoration cost approximately $30,000 more than the original contract price.

It is the position of the church that Mr. Cortese obtained money up front on representations that he needed the money to pay the organ company in full for the parts and that payment in full was not made, thus, constituting a breach of fiduciary duty and rendering the debt nondischargeable under 11 U.S.C. § 523(a)(2)(A).

Mr. Cortese appeared in proper person as a pro se litigant. He indicated that he did not have enough money to engage an attorney. The church's case rests upon fifteen documents admitted into evidence without objection and an audio tape which was admitted into evidence without objection by Mr. Cortese. Mr. Cortese offered two documentary exhibits; Exhibit No. 16 and Exhibit No. 17. The church called Mr. Cortese as an adverse witness and offered the depositions of Father James C. Gulley, Monsignor Edward Glavin and Charles Scott Moose.

The court has considered all of the evidence and all of the citations cited by counsel for the church. The issue to be decided is whether or not the conduct of Mr. Cortese so violated 11 U.S.C. § 523(a)(2)(A) as to constitute taking money under false pretenses or actual fraud, or whether the situation was a business transaction where the organ restorer was a good artist but a poor businessman and underbid the job resulting in his inability to complete same. Who should bear the economic burden? Is Mr. Cortese an honest debtor or is he a fraud, subject to the sanctions of nondischargeability of this debt.

It is the church's position that the cases of *In re Reitz*, 69 B.R. 192 (Bankr.N.D., Ill.1986) and *In re Blagaich*, 67 B.R. 375 (Bankr.S.D.Fla.1986), dictate that the debt-

or should be denied a discharge as to this specific debt.

*Reitz* involved a situation in which the debtor entered into an arrangement for the purchase of video games to equip a game room. The arrangement consisted of the debtor agreeing to lease the machines from a leasing company who financed the transaction by paying off the seller in full when the debtor made its first lease payment. The seller in turn agreed to remit $28,000 to the debtor for the specific purpose of using said money to decorate and equip the game room. However, the debtor did not use the $28,000 for the agreed-to-purpose and appropriated the funds to other purposes.

The debtor soon became disenchanted with the quality of the machines he was receiving and terminated making payments under the lease. The finance company sued debtor to recover the machines and for damages. The trial court entered summary judgment against the debtor and awarded the finance company $126,000. One month later, the debtor filed bankruptcy under chapter 11.

In its adversary proceeding, the finance company objected to the dischargeability of the judgment debt under 11 U.S.C. § 523(a)(2)(A). The bankruptcy court found clear and convincing evidence that the debtor had intended from the start to defraud the finance company and denied the debtor his discharge from the judgment debt. The court only secondarily based its ruling on the debtor's misuse of the $28,-000 entrusted to debtor for the specific purpose of decorating and equipping the game room. The court enunciated the rule that:

"When a debtor is entrusted with money to be used for a specific purpose, and he has no apparent intention of using the money for that purpose, then a misrepresentation clearly exists upon which a debt can be properly held non-dischargeable. 69 B.R. at 196 citing *In re Pappas*, 661 F.2d 82, 86 (7th Cir.1981)."

The court found sufficient evidence to indicate that at the time the deal was executed,

the debtor had no intention of ever using the money to decorate the game room.

The church also relies on the case of *In re Blagaich,* supra, a decision recently rendered by a sister court in this jurisdiction. In *Blagaich,* the debtor was entrusted with $20,000 for the specific purpose of applying said money toward the purchase of a 20 percent stock interest in a corporation represented by the debtor to legally exist. Debtor accepted this money on the further condition that such money was only to be used as "capital for legitimate corporate purposes". However, at the time of the transaction, debtor was aware that the corporation did not legally exist and intended to use the money to pay off insider loans and conceal these facts from the creditor.

Judge Weaver found the debtor's conduct clearly fell within the ambit of the rule denying dischargeability of debts incurred when money is obtained for a specific purpose and the debtor has no intention of using the money toward that purpose. 67 B.R. at 377.

The facts of the instant case are clearly distinguishable from the cases relied upon by the church and from other cases denying debtor's discharge for misappropriated funds entrusted to them for specific purpose. See e.g. *In re Pappas,* 661 F.2d 82 (7th Cir.1981); *In re Jones,* 50 B.R. 911 (Bankr.N.D.Texas 1985). In contrast to these cases, the debtor's conduct in the instant case does not illustrate the type of moral turpitude or intentional wrong 11 U.S.C. § 523(a)(2)(A) is designed to address. The record indicates that most of the monies advanced to Mr. Cortese, pursuant to his representations that it was needed to pay for the expenses associated with restoring the organ, were applied to this purpose.

Unlike the cases cited by the church, Mr. Cortese did not set out from the start to defraud the church. Mr. Cortese merely underbid the job and was caught in the bind of not having enough capital available to complete the job under the terms of the contract. Mr. Cortese did not conceal his financial troubles from the church and continuously attempted to work out a mutually acceptable arrangement whereby he could meet his obligations to the church. Furthermore, Mr. Cortese remained on the project and completed the restoration of the organ.

The standard of proof under 11 U.S.C. § 523(a)(2)(A), is that the complaining party must prove by clear and convincing evidence that the debtor obtained money by false pretenses, false representations, or by actual fraud. *In re Kimzey,* 761 F.2d 421, 424 (7th Cir.1985).

After consideration, the court finds the church has not met its burden in this regard and, therefore, determines the debt to be dischargeable under the provisions of the U.S. Bankruptcy Code.