In re Michael Albert SEGALA, Sr., Debtor.

Sharon FENSICK and Michael Fensick, Plaintiffs,

v.

Michael Albert SEGALA, Sr., Defendant.

Bankruptcy No. 90–41939–JFQ.
Adv. No. 91–4033.

United States Bankruptcy Court,
D. Massachusetts.

Oct. 18, 1991.

Joseph Nicastro, Brownell, Washburn, Kaplan, Nicastro & Truswell, Northampton, Mass., for Michael & Sharon Fensick, plaintiffs.

Lisa Van Gordon d'Errico, Hadley, Mass., for debtor/defendant.

## OPINION

JAMES F. QUEENAN, Jr., Chief Judge.

Sharon Fensick and Michael Fensick (the "Plaintiffs") own an old victorian home in Sunderland, Massachusetts which in 1987 was in need of modernization and reconstruction. They determined that the foundation, the roof, the wiring, and the plumbing all required replacement. They also decided to replace all of the house's twenty-eight windows and to renovate the kitchen and baths.

On December 2, 1987, the Plaintiffs signed a written agreement with Michael A. Segala, Sr. (the "Debtor") to do this and other work for the sum of $91,380.00. The agreement stated in part: "Payment schedule will be set up when awarded job." No formal payment schedule was ever agreed upon between the parties. Nor did the Plaintiffs' arrangement with their lender contemplate advances upon completion of specific stages of construction. The Plaintiffs' primary lender for the work was the Western Mass. Telephone Co. Workers Credit Union, which advanced to the Plaintiffs the entire net loan proceeds of $88,000 shortly after they signed the contract with the Debtor.

The Plaintiffs' financing also involved a $13,000.00 low interest loan which was designed to promote heat conservation through construction techniques such as use of windows which retain the indoor heat and resist the outside cold. In order to comply with this requirement for the windows, the Plaintiffs' agreement with the Debtor stipulated that the windows to be installed were to be "Low–E" windows manufactured by Eagle Window Company.

There was a substantial delay by the Debtor in starting the work. He did not begin the job until December of 1988, a year after the contract was signed. He and an assistant worked on the job on a full-time or part-time basis from December of 1988 to September of 1989. He terminated work in September partly because of the Plaintiffs' dissatisfaction with his work and partly because of his physical disability due to an accident on another job. His work went barely beyond the demolition stage. By September of 1989, when he left the job, he had done little reconstruction.

The Plaintiffs made payments to the Debtor totalling $68,500 in the following amounts and on the dates indicated:

| | |
|---|---:|
| December, 1987 | $ 5,000 |
| January, 1988 | 5,000 |
| December, 1988 | 5,000 |
| January, 1989 | 20,000 |
| March, 1989 | 3,500 |
| April, 1989 | 25,000 |
| September, 1989 | 5,000 |
| | $68,500 |

The first two payments were considered deposits on the contract.

Except for the $25,000 payment in April of 1989, which is discussed below, the other payments were made to the Debtor in response to the Debtor saying to the Plaintiffs in substance that he needed further funds in order to continue the job.

The Debtor's statement to the Plaintiffs with respect to the $25,000 payment made in April of 1989 was more specific. That payment was made to him in response to him saying that he needed funds for the purchase and installation of windows. The only windows which he ever purchased were eight windows bought from Eagle Window Company for about $1,300. These windows were not of the "Low E" variety, even though that type of window was available.

The Plaintiffs have a judgment by default in state court for an amount which is far in excess of $68,500 because it also reflects damages incurred by the Plaintiffs for shoddy and incomplete work. They do not seek to have this entire judgment declared nondischargeable. They seek rather to have declared nondischargeable that portion of the debt represented by their payments of $68,500. They base their complaint upon the provisions of 11 U.S.C. § 523(a)(2)(A) which prevents discharge of a debt "for money ... obtained by ... false pretenses, false representation, or actual fraud." They allege that in connection with each advance, the Debtor impliedly represented that: (i) he intended to perform the contract, and (ii) he intended to use the funds in completion of the contract. They further allege that the Debtor did not perform the contract, that at the time of receipt of the funds the Debtor did not intend to perform the contract, that the funds were not used in completion of the contract, and that at the time of receipt of the funds the Debtor did not intend to so use the funds. The Plaintiffs allege, in other words, that the Debtor misrepresented his intent to perform the contract and his intent to use the funds for completion of the contract.

## I. INTENTION TO PERFORM CONTRACT

■ We begin with the proposition that a mere failure to perform in accordance with a contract does not remove a debt from dischargeability in bankruptcy. *DeLatour v. Lala*, 15 La.App. 276, 131 So. 211 (1930). A misrepresentation of intention, however, may constitute a false representation under § 523. Lawrence King, *Collier on Bankruptcy* Para. 523.08 (15th Ed.1991). Prior cases have held that a party purchasing on credit impliedly represents an ability and intention to make the required payments. *Matter of Borah*, 36 B.R. 535 (Bankr.M.D.Fla.1983). *See also In re Harper*, 19 B.R. 207 (Bankr.M.D.Fla. 1982); *In re Boydston*, 520 F.2d 1098 (5th Cir.1975). In *Borah*, the debtor was discharged from debts incurred on credit. The debtor, at the time of purchase, had sufficient income to make the required payments, and the creditor could not prove lack of intent to perform. Conversely, the debtor's debts were declared nondischargeable in *In re Kramer*, 38 B.R. 80 (Bankr. W.D.Louis.1984). The court there found numerous factors evidencing fraudulent intent. Among them were a change in buying habits shortly before filing, a level of hopeless insolvency, and no prospects for employment.

The legal principle expounded in the credit purchase cases is analogous to the case at bar. A contract to buy goods on credit implies an intent to perform in accordance with the contractual provisions. Similarly, a contract to perform home improvements implies an intent to perform in accordance with the contract.

■ I find that each time the Debtor received funds from the Plaintiffs he represented his intention to perform the contract in accordance with its terms. I further find that in one instance he misrepresented that intention. When the Debtor received $25,000 for the purchase and installation of Low E windows, he did not intend to purchase and install windows pursuant to the contract. I am not persuaded that he misrepresented his intention to perform the

contract at the time he received the other payments.

## II. INTENTION TO USE FUNDS TO COMPLETE CONTRACT

 Plaintiffs advanced funds periodically to Mr. Segala in response to his statements that he needed the money in order to continue the job. Did he thereby impliedly represent that he intended to use the funds on this particular job? Cases dealing with this question have turned on whether the funds were "entrusted" for a specific purpose. If funds are deemed to have been entrusted to the debtor for a specific purpose, the debtor is regarded as impliedly representing his intention to use the funds accordingly. Failure to use the funds would be evidence of a misrepresentation of that intent under § 523(a)(2)(A). In *In re Pappas*, 661 F.2d 82 (7th Cir.1981), a bank loaned funds to a developer for the purchase and development of land. The debt was to be secured by the lots purchased. The developer never purchased the lots, using the funds for other purposes. The court found misrepresentation of intent to use the funds as agreed and declared the debt nondischargeable.

The debtor in *In re Miller*, 5 B.R. 424 (Bankr.W.D.Louis.1980) met a similar fate. He was building a home for the creditor and was paid by the creditor through submission of periodic invoices from his suppliers on the job detailing the job's labor and material costs to him. The creditor paid the debtor the amount shown on the invoices so that the debtor could pay the suppliers. But he instead paid other bills. The court declared the debts nondischargeable because of the debtor's misrepresentation of his intention to use the funds to pay the particular bills exhibited. *See also In re Jones*, 50 B.R. 911 (Bankr.N.D.Tex.1985) (funds loaned to purchase oil rig not so used; debt nondischargeable); *In re Reitz*, 69 B.R. 192 (N.D.Ill.1986) (funds advanced to decorate game room used otherwise).

 Here, the Debtor did not represent that specific debts had been incurred which required payment. He instead said only that he needed funds to continue the job.

But the substance is the same, at least in the particular circumstances here. I find that in requesting the funds and in saying what he did, the Debtor impliedly represented that the funds would be used on the job, and that the Plaintiffs relied on that representation.

The evidence included some detail concerning the Debtor's expenditure of the $68,500 advanced. I find that only $14,000 of these monies was used in connection with this job. I therefore find that with respect to the receipt of $51,500, the Debtor misrepresented his intention to use the funds in the performance of the contract. This misrepresentation pertains to a greater sum than does his misrepresentation concerning his intent to perform the contract.

A separate judgment has issued declaring that $51,500 of the Plaintiffs' judgment against the Debtor is nondischargeable pursuant to 11 U.S.C. 523(a)(2)(A).