In re Bruce Elliot **MELTZER**, Debtor.

Bruce Elliot **MELTZER**, Plaintiff,

v.

Beverly A. **MANTOVANI**, Defendant.

Bankruptcy No. 93–33221–BKC–SHF.

Adv. No. 94–0384–BKC–SHF–A.

United States Bankruptcy Court,
S.D. Florida.

Aug. 12, 1994.

---

Roger C. Lambert, Juno Beach, FL, for debtor/plaintiff.

Paul R. Golis, Palm Beach Gardens, FL, for defendant.

### *MEMORANDUM DECISION*

STEVEN H. FRIEDMAN, Bankruptcy Judge.

BRUCE ELLIOT MELTZER ("Debtor") seeks in his Complaint, filed pursuant to this Court's March 28, 1994 Order, to discharge his liability due to Beverly A. Mantovani ("Creditor"), whom he claims to have inadvertently omitted from his bankruptcy schedules. In response to the Complaint, Creditor filed her Answer, Affirmative Defenses and Counterclaim, essentially denying the allegations set forth in the Complaint, and asserting two separate grounds substantiating her request for relief against Debtor: (1) denial of the dischargeability of the debt due Creditor by Debtor, pursuant to 11 U.S.C. § 523(a)(2), based upon the false representation or fraud of Debtor; and (2) imposition of an equitable lien against Debtor's homestead to secure repayment of funds advanced by Creditor to Debtor. This case was tried on July 27, 1994. The Court, having carefully considered the testimony and other evidence presented, the candor and demeanor of the

witnesses, and the arguments of counsel, concludes that the debt due Creditor is dischargeable and that Creditor is not entitled to the imposition of an equitable lien against Debtor's homestead.

This cause of action arises in the aftermath of a failed relationship between Debtor and Creditor. The parties had known each other some 20 years ago, and rekindled their friendship in 1989. At the time, Debtor, who was engaged in the business of physically relocating pre-built homes and restoring such homes in Jupiter, owned some residential properties. One home is located in the Jupiter Farms area. Another home, a three bedroom, two bathroom villa is located in a subdivision known as Bella Vista. Debtor previously had occupied the Bella Vista home, utilizing the Jupiter Farms home as one of several rental properties which he owned and managed. In June or July, 1991, Creditor and Debtor decided to take up residence together in Jupiter Farms.

While the parties lived in Jupiter Farms, Creditor paid for many extravagant improvements to the home including window and wall treatments, built-in closets, and tile. Creditor contends that she was fraudulently induced by Debtor to pay for these improvements by Debtor's promise to repay her for the improvements. Debtor contends that at no time *prior to* the dates upon which the improvements were made to the Jupiter Farms property did he promise Creditor that he would pay for the improvements. Rather, Debtor asserts that Creditor lavishly furnished the Jupiter Farms home in an attempt to entice her daughter to reside with Creditor in Jupiter, rather than with her daughter's father (Creditor's ex-husband) in Miami. Creditor testified that she agreed to move to the Jupiter Farms property only after Debtor consented to make improvements to the Jupiter Farms house, and only after Debtor agreed to repay Creditor for all improvements funded by her.

The Court is persuaded that Debtor's promises to repay Creditor for home improvements to the Jupiter Farms house were made many months after Creditor had moved to Jupiter and the improvements were

made, and that such representations were offered in an attempt to appease Creditor, and later, to facilitate the division of property between Debtor and Creditor at the end of their relationship. Debtor's unrebutted testimony is that he and Creditor intended for the Jupiter Farms house to be their permanent residence, rather than as a temporary abode pending the refurbishing and subsequent resale of the home at a profit. Debtor's position is corroborated by the testimony of two witnesses, Steven Mellor and Eydie Roth, both of whom acknowledge that the nature and extent of improvements and furnishings were excessive, considering the market value and style of the home and its location. Steven Mellor testified that he advised Debtor, during the course of assisting Debtor in the construction of the improvements to the home, that upon a subsequent resale of the home, it would be difficult to recoup all the money that had been expended on the improvements. In addition, Eydie Roth, an employee of the firm which sold and installed most of the improvements to the Jupiter Farms home, stated that, although it was not unusual to install such expensive wall and window treatments and furnishings in a home intended for subsequent resale, such homes normally would sell in the range of $400,000 to $500,000. By Creditor's own estimation, the market value for the Jupiter Farms home did not exceed $190,000.

This testimony indicating that Debtor and Creditor intended to reside permanently at the Jupiter Farms home is also corroborated by many of the exhibits introduced into evidence. Particularly telling are the records reflecting the nature and extent of the decorative window treatments and other furnishings, all of which were selected by, and installed at the instance of, Creditor. The cost of shower curtains and valances to the master bathroom ($1,900.00) and the bathroom to be utilized by Creditor's daughter ($1,000.00), together with the expense incurred for window treatments in the master bedroom ($1,980.00) indicate that Creditor intended to make the Jupiter Farms home her residence for many years. This evidence undermines Creditor's argument that, once the Jupiter Farms home was refurbished, it was to be sold with the profit to be divided between Debtor and Creditor.

▄▄▄ The evidence presented at trial does not support a finding that Creditor expended her funds based upon the false pretenses or false representations of Debtor, thereby warranting denial of the dischargeability of such an obligation under 11 U.S.C. § 523(a)(2)(A). It is well established that a creditor has the burden of proving each element of § 523(a)(2)(A) by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). In order for a bankruptcy court to determine whether a particular debt is non-dischargeable because of a debtor's false representation, a creditor must establish that:

(1) [t]he debtor made a false representation with the purpose and intention of deceiving the creditor;

(2) the creditor relied on such representations;

(3) his reliance was reasonably founded; and

(4) the creditor sustained a loss as a result of the representation.

*In re Hunter*, 780 F.2d 1577, 1579 (11th Cir.1986); *In re Mullin*, 88 B.R. 454 (Bankr. S.D.Fla.1988). Although the improvements to the home appear to have been effectuated by Creditor with Debtor's consent, Debtor made no statements or representations to Creditor upon which she relied which induced Creditor to pay for such improvements. While Debtor did promise to repay Creditor for the improvements, such representations were made after the fact. A mere failure to perform in accordance with a contract or an agreement does not make a debt non-dischargeable. *In re Baker*, 139 B.R. 692 (Bankr.N.D.Ohio 1992); *In re Segala*, 133 B.R. 261 (Bankr.D.Mass.1991). Creditor's expenditures to improve the Jupiter Farms home were precipitated by Creditor's desire to create a comfortable and attractive home for herself, her daughter, and Debtor, and were not based upon Debtor's promise to repay Creditor after a resale of the home.

▄▄▄ As to Creditor's contention that she is entitled to an equitable lien against the Jupiter Farms property to secure repayment of her funds expended for permanent improve-

ments, it is well established that when an equitable lien is sought against homestead real property, some fraudulent or otherwise egregious act by the beneficiary of the homestead must be proven. *In re Grocki,* 147 B.R. 274 (S.D.Fla.1992).; *In re South Florida Title, Inc.,* 104 B.R. 489 (Bankr.S.D.Fla. 1989). No evidence has been presented to establish that Creditor extended funds in reliance on any false representation of Debtor. Rather, Creditor voluntarily advanced funds for home furnishings and furniture, and most of these items were removed by Creditor upon her break-up with Debtor. Accordingly, Creditor's claim of an equitable lien also fails.

A separate judgment will be entered in accordance with Federal Rule of Bankruptcy Procedure 7054 determining the prepetition obligation owed by Debtor to Creditor is discharged, and further determining Creditor's claim of an equitable lien against the subject property is invalid.

**ORDERED**